41 N.J. Super. 89 (1956)
124 A.2d 14
ARTHUR J. JANTAUSCH AND ANN M. JANTAUSCH, PLAINTIFFS,
v.
BOROUGH OF VERONA, A MUNICIPAL CORPORATION OF NEW JERSEY, AND VERONA BOARD OF ADJUSTMENT, NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 12, 1956.
*91 Mr. John W. Lebeda, attorney for plaintiffs.
Mr. William J. Camarata, attorney for defendants (Mr. Fred G. Stickel, III, of counsel).
WEINTRAUB, J.S.C.
Plaintiffs obtained from the building inspector a permit for the alteration of their home and the operation of a beauty salon therein. Property owners within 200 feet appealed to the board of adjustment, which, after hearing, determined that the issuance of the permit "for the use disclosed was in error" and revoked "this permit *92 insofar as the use for a beauty salon is concerned." Plaintiffs thereupon instituted the present action in lieu of prerogative writ to review the decision of the board.
The zoning ordinance, adopted in 1939, established four one-family residential districts. Section 6.1, applicable to all residential districts, provides:
"6.1 General Provisions  Use
Within any one-family residence district no buildings shall be erected or altered or used in whole or in part for any other than the following specified purposes:
6.11 Single detached house used as a residence by not more than one family.
6.12 A residence containing the professional office of its resident owner or lessee.
6.13 Home occupations incidental to the use as a residence, provided that such occupations shall be conducted solely by resident occupants of the building, and that no display of products shall be visible from the street.
6.14 A church or any place of worship, including parish house or Sunday School Building.
6.15 Buildings used for private horticultural or agricultural purposes, private garages or stables, and private dog kennels."
The word "profession" is defined in section 2:
"Profession. Includes the following: physician, surgeon, dentist, osteopath, chiropractor, lawyer, real estate or insurance broker, architect and civil, electrical, mechanical or industrial engineer."
The ordinance does not define "home occupations."
Conceiving the contemplated beauty culture activity would constitute a home occupation, plaintiffs sought the permit, and the building inspector, being of a like view, issued it.
The property is in One-Family Residence District B. The dwelling is a split-level, one-family house with a two-car garage, physically at ground level beneath the bedrooms in the second story of the home.
The application for the permit disclosed the purpose to divide the two-car garage into a one-car garage and a beauty salon; the salon to be divided into a reception room, with two booths with chairs, two sinks and stools, lavatory, and beauty salon equipment. The exterior changes consisted of *93 the removal of the large overhead door, the substitution of an overhead door for the one-car garage and, in the words of the board of adjustment, "the installation of an attractive colonial style door for the salon portion." The alterations have in fact been completed in accordance with the filed plans.

I.
At the hearing before the board of adjustment evidence was offered that plaintiffs expended some $3,000 on the strength of the permit, and that some of the appellants were aware of the proposed use and the alterations during their progress and failed to express dissent, although the proof does not indicate their acquiescence. On this basis, plaintiffs urge the permit may not be revoked. At the pretrial conference the existence of the issue was challenged by defendants. Plaintiffs had complained in the general form annexed to the rules of court (Form 35) which is silent as to specific challenges, and assumed the issue of estoppel could thus be projected. The suggested form at most embraces issues within the jurisdiction of the board, and estoppel would not seem to be among them. Yet a party attacking the action of a board of adjustment may join other appropriate claims for relief, as, for example, a claim that the ordinance itself is invalid, and since our settled policy is to adjudge all cognate disputes in a single action and the borough itself is a party defendant, I permitted the issue of estoppel to be included in the pretrial order. Dolan v. DeCapua, 16 N.J. 599 (1954).
Our cases clearly settle the controlling principles at the extreme poles of the problem. Where the permit is regularly issued in accordance with the ordinance, it may not be revoked after reliance unless there be fraud. Grossman v. Mayor, &c., Jersey City, 6 N.J. Misc, 688, 142 A. 558 (Sup. Ct. 1928); Citizens Holding Co. v. Board of Adjustment of the City of Newark, 7 N.J. Misc. 61, 144 A. 329 (Sup. Ct. 1929); Lehigh Valley R.R. v. Mayor, etc., Jersey City, 7 N.J. Misc. 154, 144 A. 578 (Sup. Ct. 1929), *94 affirmed o.b. 106 N.J.L. 248 (E. & A. 1929); Freeman v. Hague, 106 N.J.L. 137 (E. & A. 1929); Kornylak v. Hague, 8 N.J. Misc. 481, 150 A. 669 (Sup. Ct. 1930); Horwitz v. Jones, 12 N.J. Misc. 375, 171 A. 552 (Sup. Ct. 1934). On the other hand, where there is no semblance of compliance with or authorization in the ordinance, the deficiency is deemed jurisdictional and reliance will not bar even a collateral attack after the expiration of time limitation applicable to direct review. Lynch v. Borough of Hillsdale, 136 N.J.L. 129 (Sup. Ct. 1947), affirmed o.b. 137 N.J.L. 280 (E. & A. 1948); V.F. Zahodiakin Engineering Corp. v. Zoning Board of Adjustment of City of Summit, 8 N.J. 386 (1952); Garrou v. Teaneck Tryon Co., 11 N.J. 294 (1953); cf. State v. Yaccarino, 3 N.J. 291 (1949), and Morris v. Borough of Haledon, 24 N.J. Super. 171 (App. Div. 1952). And reliance in such circumstances has been held not to constitute a special reason within R.S. 40:55-39(d). Keller v. Town of Westfield, 39 N.J. Super. 430 (App. Div. 1956); cf. Dolan v. DeCapua, supra (16 N.J., at page 610).
But what of the intermediate situation in which the administrative official in good faith and within the ambit of his duty makes an erroneous and debatable interpretation of the ordinance and the property owner in like good faith relies thereon? The dictum in favor of estoppel contained in Freeman v. Hague, supra (106 N.J.L., at page 140) perhaps falls in this area. Cf. Sun Oil Co. v. Clifton, 16 N.J. Super. 265, 269 (App. Div. 1951), and Kurowski v. Board of Adjustment of Bayonne, 11 N.J. Super. 433, 440, 441 (App. Div. 1951). In Adler v. Department of Parks and Public Property, Township of Irvington, 20 N.J. Super. 240 (App. Div. 1952), however, a permit was held revocable notwithstanding that the barrier to its validity depended upon the resolution of an issue of construction, which, although ultimately not too debatable, yet was sufficiently substantial to render doubtful a charge that the administrative official acted without any reasonable basis or that the owner proceeded without good faith.
*95 On the other hand, in Marini v. Borough of Wanaque, 37 N.J. Super. 32 (App. Div. 1955), the court held the review to be out of time and rejected the contention that the issuance of the permit could be attacked collaterally out of time, saying (p. 40) that "If anything, it was a mistaken or irregular exercise of a ministerial function" rather than action which is utterly void as in V.F. Zahodiakin Engineering Corp. After thus concluding that time barred the attack, the court additionally found laches in the period of delay after full knowledge. That case involved a building ordinance rather than a zoning ordinance but the difference would not seem to be a telling one.
I have no doubt as to the good faith of plaintiffs and the building inspector. Additionally, whether the building inspector's view of the ordinance was sound or not it cannot be said to be unreasonable. There should be some point at which the owner of property who acts in such circumstances becomes secure. Proceedings for a declaratory judgment would serve that end but, realistically, resort to litigation is cumbersome in this context. The line drawn must, however, give due consideration to the rights of other property owners, and in the light thereof it probably should not be drawn at any point prior to the expiration of the right to appeal. Even here a difficulty lies in the absence of statutory provision for notice to neighboring property owners of an application for a permit, and hence the fairness of this approach may be questionable. See Adams v. Jersey City, 107 N.J.L. 149 (E. & A. 1930), and Holloway v. Township of Pennsauken, 12 N.J. 371, 375 (1953). At any rate, the appeal to the board of adjustment was, according to the stipulation of the parties, within time. This being so, reliance upon the permit in the intervening period should not suffice to sustain a plea of estoppel. Nor should laches be found in such circumstances. It may be added that proof of laches as to some appellants to the board could not bind other affected property owners and hence a finding of laches as to some would be of no practical significance.

*96 II.
Defendants urge the issue to be whether the determination of the board of adjustment was arbitrary, capricious or unreasonable. The asserted test obtains only where the board's action under R.S. 40:55-39 involves administrative expertness and the exercise of powers essentially administrative. See, for example, Tomko v. Vissers, 21 N.J. 226 (1956); Beirn v. Morris, 14 N.J. 529 (1954); Cummins v. Board of Adjustment of the Borough of Leonia, 39 N.J. Super. 452 (App. Div. 1956). Review is thus limited in such cases in harmony with the traditional approach that the judiciary will not merely substitute its independent judgment for that of the body entrusted by the Legislature with the administrative function. Beirn v. Morris, supra (14 N.J., at page 538). But the interpretation of an ordinance is a purely legal matter as to which the administrative agency has no peculiar skill superior to the courts'.
Where the issue is thus one of law, the court's duty and authority are not curtailed by the circumstance that the issue happens to reach it via the board of adjustment. It cannot be that diametric results must be reached under the same ordinance depending upon whether the issue arises in proceedings before the board of adjustment or upon a complaint in the magistrate's court or in an action to restrain a violation under R.S. 40:55-47. See Delpriore v. Ball, 281 App. Div. 214, 118 N.Y.S. (2d) 53 (App. Div. 1953).
On the contrary, the meaning of an ordinance raises a question "peculiarly suited to judicial treatment rather than disposition by an administrative board in a quasi-judicial function" and hence exhaustion of the administrative review was held not to be required in Honigfeld v. Byrnes, 14 N.J. 600, 603 (1954), wherein the court added (p. 604) from Nolan v. Fitzpatrick, 9 N.J. 477 (1952), that "`the opinions of the administrative tribunals would not be persuasive as they would be on questions of fact within *97 their purview.'" The difference in judicial approach to an administrative agency's construction of an act and an agency's exercise of its expert discretion, is illustrated by two opinions recently delivered by the Supreme Court upon the same day. Bogue Electric Co. v. Board of Review, &c., 21 N.J. 431 (1956) and Paterson Publishing Company, Inc. v. New Jersey Bell Telephone Company, 21 N.J. 460 (1956).
This is not to say that the views of others, both the board of adjustment and the building inspector, should not receive respectful consideration, but rather that an erroneous interpretation by either is not secured from judicial disagreement by some special insulation impenetrable except upon a finding of arbitrariness, capriciousness, or unreasonableness. In fact, the board disclaimed any special advantage. The question had never before reached it. It observed that "It is hard to reflect back to 1939 and determine what the framers of this ordinance intended to cover by the use of this term [home occupations]."

III.
We come then to the meritorious question, whether the proposed use is within the authorization of section 6.13 of the ordinance.
It seems clear that the calling of a beautician may not be described as a profession. It has not been so denominated by the statute relating to beauty culture. N.J.S.A. 45:4A-1 et seq. Rather it is there described as an "occupation," N.J.S.A. 45:4A-1, 2, 4, and also as a "business," N.J.S.A. 45:4A-2. The calling does not have the attributes of a profession as that term is ordinarily used. See Trinka Services, Inc. v. State Board of Mortuary Science of New Jersey, 40 N.J. Super. 238 (Law Div. 1956). There is no evidence in the ordinance that a wider sweep was intended.
Is it a home occupation? The word "occupation" is most comprehensive. It may embrace all gainful activities, professional or business, and whether pursued as an *98 employee or self-employer. 67 C.J.S., p. 74. Hence plaintiffs' proposed activity must be deemed an occupation within the meaning of the ordinance unless there be found therein a purpose to restrict its natural scope.
Is the proposed activity "incidental to the use as a residence"? I think it clearly is. A use is thus incidental so long as the main use of the dwelling remains residential and the occupational activity is factually subordinate. Bassett, Zoning (1940), p. 101. The circumstance that the relatively small area here to be used for beauty culture was initially part of the garage rather than of some other portion of the structure is of no consequence. The dwelling would remain predominantly a dwelling.
So also the proposed use would be "conducted by resident occupants of the dwelling," namely, by Mrs. Jantausch alone. Lemp v. Township of Millburn, 129 N.J.L. 221 (Sup. Ct. 1942); State v. Mair, 39 N.J. Super. 18 (App. Div. 1956).
Thus far there is no conflict with the ordinance. Defendants assert the ordinance as a whole evidences a purpose to exclude beauty culture from home occupations. The court, of course, must consider the entire enactment to find the legislative purpose. The point made is that in section 8 "beauty parlor" is listed in the enumeration of uses permitted in business districts, which fact, defendants urge, shows it was not embraced in home occupations in section 6.13. This does not follow unless one can say that home occupations do not include business activities. If home occupations do not include business activities, I fail to understand what they do include, unless the distinction sought to be advanced is between employment and self-employment, and nothing in the ordinance so intimates. In fact, section 5.81 authorizes a sign for home occupations, a provision which would be inappropriate if home occupations embraced solely employment for others, and the provision in section 6.13 "that no display of products shall be visible from the street" plainly imports that merchandising of some kind was affirmatively contemplated.
*99 It is suggested that the inclusion of "beauty parlor" in section 8 demonstrates it is not a home occupation because section 8 also authorizes the conduct in a business district of "Any use specified in Sections 6 and 7" and hence, if beauty culture is a home occupation, it would already be authorized in business districts by virtue of the quoted language and the specification of "beauty parlor" would thus be superfluous. The fallacy lies in the circumstance that the inclusion by reference to section 6 would have authorized such activity in the business districts only as home occupations, with the limitations thereon contained in section 6.13. Hence, if beauty culture is a home occupation it would still be necessary and appropriate to authorize such activity in section 8 without the restrictions contained in section 6.13, and this conclusion is supported by the fact that section 8 also specifies "professional office" notwithstanding that a professional office, with the restrictions contained in section 6.12, is also authorized by the very reference to section 6 in section 8 upon which defendants' argument rests.
Defendants ask the court to read into section 6.13 limitations that (1) the home occupation be a "customary" home occupation; (2) it be not a "business"; (3) no portion of the dwelling may be set aside exclusively for the home occupation; (4) no equipment may be used other than equipment normally found in the home.
In support of the first two suggested limitations, defendants refer to the discussion in Bassett, Zoning (1940), pp. 100, 101 and Information Report No. 54 dated September, 1953 of the American Society of Planning Officials. Both references contain discursive reviews of the area and are more revealing as to the types of ordinances adopted and treatment given them in accordance with their particular phrasing than of immutable rules which are to be applied inexorably to all ordinances without regard to the language used. These references serve perhaps to illustrate the techniques which a legislative body may or may not choose to adopt to contain home occupations within the ambit which it thinks compatible *100 with a residential district. At any rate, let us consider each suggested restriction.
Section 6.13 does not confine home occupations to "customary" ones. It could have so provided, as has been done in other ordinances which have been judicially reviewed. In defining "Accessory Buildings" section 2 refers to "customary" uses, and hence the word was within the easy reach of the draftsman if he intended a like limitation upon home occupations. I suppose some limitation could be found in the use of the word "home" to modify "occupations." I have doubts that "home" carries the limitation "customary" but, for discussion, let us assume it does.
What would "customary" mean in the present setting? There are many, many home occupations; so much so, that general legislation has been adopted to subject home work to regulation and licensing by the State Department of Labor and Industry. R.S. 34:6-120 et seq. Thereunder permits have been issued for some 50 specific categories of activities. Is "customary" to be measured by reference to the state or to a more restricted area, perhaps the borough itself?
And is "customary" a mathematical concept in this context, and if it is, does it require the conduct of beauty culture in the home to be the habitual or the usual mode of operation measured on the basis of all beauty work in the area? Bassett (p. 100) cites the milliner and the lawyer as persons engaged in customary home occupations. Today many milliners, perhaps a majority, operate independently of the home. Certainly, in this area, most lawyers so operate. Do they cease to be customary home occupations? No doubt the degree of use is a factor. Dolan v. DeCapua, 13 N.J. Super. 500, 508 (Law Div. 1951). The practice should be sufficient to justify the observation that is not unique or rare. It should be appreciable or perhaps substantial. It should be sufficient to constitute a recognized mode of activity in the field, but it need not be the more prevalent one. It seems to me that no more can be implied in the word "home," either directly or through the intermediate implication therein of a requirement that it be "customary."
*101 Bassett (p. 101) says a manicure parlor "probably" is not a customary use, but then observes that "Very likely a woman hairdresser or a man barber working in their respective homes would not be complained against by neighbors, but if the woman displayed advertising or the man a barber pole the building inspector would object." He refers to no decisions. In fact, no case has been found by counsel or the court in which a beauty salon has been held not to be a home occupation, except upon the basis of the specific language in the ordinance. See Dobres v. Schwartzman, 191 Md. 19, 59 A.2d 684 (Ct. App. 1948); Bonasi v. Board of Adjustment of Haverford Township, 382 Pa. 307, 115 A.2d 225 (Sup. Ct. 1955); Board of Adjustment v. Levinson, 244 S.W.2d 281 (Tex. Civ. App. 1951).
On the other hand, there is substantial evidence that a beauty salon may be a home occupation. In its bulletin No. 95, revised as of March 1955, the Small Business Administration of the United States Department of Commerce, in dealing with "home businesses" (used in the sense of home occupations), includes "beauty-parlors" among them. The bulletin is not part of the record, but I have judicially noticed it. The practice in New Jersey was sufficient to lead the Legislature to prohibit "any person to sleep in or use for residential purposes any room used wholly or in part as a beauty shop," R.S. 45:4A-16; and Rule 8 of the Board of Beauty Culture Control provides "The entrances to beauty shops located in private residences must permit patrons to enter the shop directly from the public thorofare without passing through any portion of the home," and Rule 9 provides "No portion of licensed premises shall be used for domestic or residential purposes." Thus the statute and rules recognize a practice of conducting beauty shops in private residences, and in fact plaintiffs hold the requisite approval.
Addressing the inquiry to the immediate locality, defendants offered a realtor who testified that in some 2,000 transactions he did not come upon this operation in homes. The witness' experience is not particularly revealing. More *102 helpful would have been the experience of inspectors of the Board of Beauty Culture Control or suppliers in the beauty culture field. At any rate, the testimony shows four beauty shops presently conducted in residential districts of the borough, three antedating the ordinance and one commencing shortly after its enactment. Defendants dismiss these operations as "nonconforming" uses, but why are they not evidential of a customary use? There was no evidence as to the total number of beauty salons in the borough in 1939 when the ordinance was adopted, but the records of the Board of Beauty Culture Control, which I have judicially noticed, show the present total to be 10. It seems to me that when four of ten are in the residential districts, the practice is sufficient to denominate it as customary. Doubtless, with urbanization and increased emphasis from the subject, the tendency is to expand into separate establishments, but this development, as indicated above with reference to the practice of law or millinery, is not enough to destroy the customary aspect of the calling as a home occupation.
With respect to the limitation that the home occupation be not a "business," Bassett (p. 101) cites two trial court opinions in New York not officially reported. Perhaps they turned on the phrasing of ordinances. It seems to me to be a plain contradiction in terms to say a home occupation may not be a "business" as that word is ordinarily understood; and if thereby it is meant that a home occupation may be only an employment for another rather than self-employment, the ordinance here under consideration negates the distinction, as I have pointed out above.
The third suggested limitation, that no portion of the home be used solely for the home occupation, is not supported by any reference to authority or to practice. So long as the main use of the dwelling remains residential I see no significance in the circumstance that a part of the structure is used exclusively for the occupation. In fact, the bulletin of the Small Business Administration, cited above, specifically recommends that course, and the practice surely is commonplace *103 among home occupations of a professional nature. It may be noted, for whatever impact it may have, that the statute relating to home work authorizes the Commissioner to require precisely such physical separation. R.S. 34:6-129. The ordinance does not proscribe the practice.
Nor is there anything in the ordinance which prohibits the use of equipment other than equipment usually found in the home. The borough might have so provided, as was done in the ordinances considered in State ex rel. Kaegel v. Holekamp, 151 S.W.2d 685 (Mo. Ct. App. 1941) and State ex rel. A. Hynek & Sons Co. v. Board of Appeals of the City of Racine, 267 Wis. 309, 64 N.W.2d 741, 66 N.W.2d 623 (Sup. Ct. 1954), but it did not. The bulletin of the Small Business Administration, cited above, treats this factor as usual in home businesses.
It is urged that the statute relating to beauty culture and the rules of the board thereunder with regard to physical separation of the shop, minimum space (150 square feet), separate entrance (usual in cases of professional offices), equipment, and the use of a sign visible to the public (the ordinance authorizes such sign), should operate to prevent beauty culture from being a home occupation. Support for that view is found in Dobres v. Schwartzman, supra (59 A.2d, at page 686) where, however, the primary basis for the judgment was the language of the ordinance itself. I am unable to accept that view because, if voluntary measures of such character do not deprive the operation of its status as a home occupation, I cannot understand why compulsory measures of no different character should have that consequence.
It boils down to this: The borough could have adopted any or all of a number of techniques to confine home occupations in such manner as, in its sole legislative judgment, would render them compatible with a residential district. The decision is wholly legislative, and as such is beyond the initiative of the board of adjustment or the courts. The borough was content to circumscribe the operations by the restrictions that they be incidental to the main purpose of *104 a residence, be occupant-conducted, and with a sign of limited size. It could have done more, but it did not; and I could not add to the restraints without exercising a legislative power which is not mine.
This is not to deny or limit the legislative authority of the municipality. On the contrary, the greatest latitude in this area may be conceded. Scarborough Apartments, Inc. v. City of Englewood, 9 N.J. 182 (1952). But the legislative power must be exercised by the municipality itself; it may not ask the courts to write a better or a different ordinance. And it should speak clearly, Hrycenko v. Board of Adjustment, Elizabeth, 27 N.J. Super. 376 (App. Div. 1953), especially in view of the predicament of the citizen who seeks in good faith to utilize his property. His right so to do should not depend upon the outcome of litigation after the event in which a provision, which he apparently fully meets, assumes a new and different significance by a process of refined interpretation. And this should be so without reference to the principle of strict construction which has been held to apply to zoning ordinances. 8 McQuillin, Municipal Corporations (3rd ed. 1950), sec. 25.72, p. 123; 1 Yokley, Zoning Law and Practice (2d ed. 1953), sec. 3, p. 4; City of Newark v. Martin, 19 N.J. Super. 328 (Cty. Ct. 1952), reversed on other grounds, 22 N.J. Super. 32 (App. Div. 1952), and judgment reinstated sub nom. City of Newark v. Pulverman, 12 N.J. 105 (1953); cf. Marini v. Borough of Wanaque, supra (37 N.J. Super., at page 36).
The determination of the board of adjustment is reversed and the issuance of the building permit is affirmed.