JOHNIE K. ALSTON, INDIVIDUALLY AND AS PRESIDENT OF WEST PALISADE HOME OWNERS ASSOC.; CITY COUNCIL OF CITY OF ENGLEWOOD v. BD. OF ADJUSTMENT OF ENGLEWOOD AND JIENDETTA SYKES.

Superior Court of New Jersey
Law Division Bergen County

Decided November 19, 1986.

*Carlos Peay, Jr.* for plaintiff Alston.

*William Rupp* for plaintiff-intervenor City Council of Englewood.

*Stephen H. Roth* for defendant Board of Adjustment of Englewood.

*Michael Gross* for defendant Sykes.

STARK, J.S.C.

The previously unexplored issue presented herein is whether the 1984 amendment to *N.J.S.A.* 40:55D–70(b) of the Municipal Land Use Law (MLUL) altered the standard of judicial review when ordinance interpretation by a board of adjustment is at issue.

Plaintiff, resident of the City of Englewood, filed this in lieu of prerogative writs action challenging an interpretation by the Englewood Board of Adjustment holding that a senior citizen congregate home occupied by six unrelated persons over the age of 65 was a permitted one-family use and not a proscribed rooming house.

Plaintiffs and intervenor assert that the board's ordinance interpretation went beyond its delegated power and is

therefore a purely legal matter which deserves no more than respectful consideration during court review. *Jantausch v. Borough of Verona,* 41 *N.J.Super.* 89, 96–97 (Law Div.1956); *YWCA v. Bd. of Adj. Summit,* 134 *N.J.Super.* 384, 388 (Law Div.1975); *United Prop. Owners Assn. of Belmar v. Belmar,* 185 *N.J.Super.* 163 (App.Div.1982), certif. den. 91 *N.J.* 568 (1982). All the cited cases rested upon either the Municipal Planning Act or the former section of the MLUL each of which limits board of adjustment powers of interpretation to those granted in an ordinance rather than pursuant to the goals of the statute.[1] Both contain the following identical language:

> Hear and decide, *in accordance with the provisions of any such ordinance,* requests for ... interpretation of the map ... [*N.J.S.A.* 40:55–39b] ... or ordinance [*N.J.S.A.* 40:55D–70b; emphasis supplied]

*Jantausch* and its progeny strictly construed these former statutes by holding that a board of adjustment was confined to a determination that did not go beyond the express words of the ordinance. Even if all the indicia of a proposed use were identical with a stated allowable category, the failure to expressly state the proposed use in the ordinance would deprive the board of final determination. Nothing but a dictionary equivalent was encompassed in their power to interpret ordinances. If the interpretation extended to the question of legislative intent by extrapolation to a related but unexpressed use, the court then had untrammeled power to substitute its judgment for that of the administrative agency. *Jantausch, supra; YMCA, supra; United Prop. Owners Assn. of Belmar, supra.*

However, in 1984 the Legislature amended the MLUL, *N.J. S.A.* 40:55D–70(b), to provide as follows:

> (b) Hear and decide requests for interpretation of the zoning ... ordinance ... *in accordance with this act.* [Emphasis supplied]

---

[1] *Open-Door Alcoholism Prog. v. Bd. of Adj.,* 200 *N.J.Super.* 191 (App.Div. 1985). (This case dealt with ordinance interpretation but did not address the standard of judicial review).

The legislative statement appended to the amendment states its purpose:

> to make the power of the board of adjustment to hear and decide requests for interpretation of the zoning ... ordinance as clearly a statutory power of the board as is the variance power.

This equation of interpretation and variance powers must be accorded the utmost deference since the proponent's statement confirms the apparent reason for deletion and substitution of the statutory words. *Lizak v. Faria*, 96 *N.J.* 482, 492–495 (1984); *Data Access Systems, Inc. v. State*, 63 *N.J.* 158, 166–167 (1973).

The standard of judicial review applicable to municipal zoning action is not statutorily articulated but has developed through case law. *Jantausch, supra* (upon review of "b" court may substitute its own judgment); *Kramer v. Bd. of Adj. Sea Girt*, 45 *N.J.* 268 (1965) (upon review of "c" and "d," court must find action arbitrary, unreasonable or capricious before overturning). The Legislature is deemed to have known this disparity in judicial review standards when it amended the MLUL, *N.J.S.A.* 40:55D–70(b), to conform with powers attendant to "c" and "d." *See generally Levin v. Tp. of Parsippany-Troy Hills*, 82 *N.J.* 174, 182 (1980); *Quaremba v. Allen*, 67 *N.J.* 1, 14 (1975); *Baptist Home of South Jersey v. Borough of Riverton*, 201 *N.J.Super.* 226, 234–235 (App.Div.1985). The arbitrary, unreasonable or capricious standard has served, since at least 1948, to reinforce separation of powers as well as to confirm that boards of adjustment:

> ... because of their peculiar knowledge of local conditions must be allowed wide latitude in the exercise of delegated discretion. Courts cannot substitute an independent judgment for that of the boards in areas of factual disputes; neither will they exercise anew the original jurisdiction of such boards or trespass on their administrative work. So long as the power exists to do the act complained of and there is substantial evidence to support it, the judicial branch of the government cannot interfere. A local zoning determination will be set aside only when it is arbitrary, capricious or unreasonable. Even when doubt is entertained as to the wisdom of the action, or as to some part of it, there can be no judicial declaration of invalidity in the absence of clear abuse of discretion by the public agencies involved. [*Kramer, supra*, 45 *N.J.* at 296–297.]

Board review of (c) and (d) variances has always required analysis of facts as they relate to statutory zoning policy, concepts and purposes as well as local legislative intent, useage and needs. *Lusardi v. Curtis Point Prop. Owners Assn.*, 86 *N.J.* 217, 226–227 (1981). Implicit in the amendment to "b" is the recognition that identical analysis and expertise is required to interpret ordinances. Application of the pre-amendment standard of review would render this revised statutory section a cipher. Statutes must be interpreted to avoid such a conclusion. *N.J. Sports & Exposition Authority v. McCrane*, 119 *N.J.Super.* 457, 472–473 (Law Div.1971), mod. on other grounds 61 *N.J.* 1 (1972); *Danesi v. American Mfrs. Mut. Ins. Co.*, 189 *N.J.Super.* 160, 164 (App.Div.1983).

It is patent that the Legislature may delegate expanded zoning powers to municipalities. *N.J.Const.* (1947), Art. IV, Section VI, Paragraph 2; *N.J. Sports & Exposition Authority, supra,* 119 *N.J.Super.* at 475. Courts have traditionally applied the arbitrary, capricious or unreasonable standard of review to administrative boards' interpretative decisions where proper legislative underpinnings exist. *Paterson Publishing Co., v. N.J. Bell Telephone Co.,* 21 *N.J.* 460, 467 (1956) (Public Utilities Commission); *Barry v. Arrow Pontiac,* 100 *N.J.* 57, 70–72 (1985) (Division of Consumer Affairs). In order to give vitality to the subject MLUL amendment, augmentation in judicial review standards to bring them into parity with variance review is militated. The ineluctable conclusion is that the test which must now be applied in reviewing board of adjustment actions pursuant to *N.J.S.A.* 40:55D–70(b) is whether such action was arbitrary, capricious or unreasonable.

During the three hearings that preceded the Englewood Board of Adjustment's determination, each relevant section of the Englewood zoning ordinance was analysed in accordance with facts adduced of record. From their factual findings the board concluded that the congregate senior citizens home constituted a single-family unit rather than a rooming house.

Since its conclusion was based upon substantial credible evidence which was neither arbitrary, capricious nor unreasonable, the board's action must be deemed valid.

Judgment shall be entered accordingly.