221 N.J. Super. 141 (1987)
534 A.2d 41
FRANK AND MARY CHERNEY, PLAINTIFFS-RESPONDENTS,
v.
MATAWAN BOROUGH ZONING BOARD OF ADJUSTMENT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1987.
Decided November 18, 1987.
*142 Before Judges ANTELL, DEIGHAN and R.S. COHEN.
Lynne Andreades argued the cause for appellant (Foley, Shelly & Niemann, attorneys).
Stanley Yacker argued the cause for respondents (Yacker & Granata, attorneys).
The opinion of the court was delivered by R.S. COHEN, J.A.D.
Plaintiffs Frank and Mary Cherney own a home in a single-family residential district in Matawan. It is a bi-level or raised ranch, with a bedroom, bath, den, laundry room and garages on the grade-level first floor and three bedrooms, two baths, kitchen, living room and dining room on the second floor. Soon after plaintiffs bought the house in early 1985, Mary Cherney's parents joined plaintiffs in living there. They slept in the downstairs bedroom. The father was in his eighties and had difficulty with the stairs to the second floor. Plaintiffs and their daughter used the upstairs bedrooms.
*143 Without a building permit, plaintiffs installed compact kitchen facilities in a former closet on the first floor, including a sink and a stove. It is not clear if there was also a refrigerator. Connections to utilities, gas, electricity, water and sewer were not separated. Although the two floors could be made capable of serving as independent living quarters, they are not inhabited in that way, according to plaintiff Mary Cherney. Everyone uses the same outside doors. There are no partitions or doors separating the floors. "Anybody can go from one part of the house to the other." * * * "We eat upstairs, we eat downstairs, all summer we eat in the downstairs or in the back." By "we," she meant "the whole family."
In March 1985, the zoning officer told plaintiffs to remove the second kitchen which, he said, created an illegal two-family house. Counsel wrote back that he could find nothing in the zoning ordinance prohibiting plaintiffs' ground floor "summer kitchen." The zoning officer replied by letter, "That makes two of us." Yet, he maintained his position that it created an illegal two-family house. Plaintiffs then applied to the Board of Adjustment for an interpretation of the ordinance under N.J.S.A. 40:55D-70b, and for a variance if the interpretation went against them. N.J.S.A. 40:55D-70d. The Board ruled against plaintiffs, finding first that the second kitchen was prohibited by the ordinance, and second that the evidence did not demonstrate special reasons or satisfy the negative criteria of the statute for the grant of a variance.
In plaintiffs' subsequent prerogative writ action, the variance aspect of the matter receded, and the court and the parties concentrated on the issue of whether installation of the downstairs kitchen violated the zoning ordinance. The Law Division decided that there was no violation, and entered judgment for plaintiffs. We agree and thus affirm.
The Matawan zoning ordinance permits single-family detached dwellings in the district where plaintiffs' home is located. A "dwelling" is defined by the ordinance as:

*144 A building or portion thereof designed for and used exclusively for residential occupancy, * * *
A "dwelling unit" is:
One or more living or sleeping rooms with cooking or sanitary facilities for one person or one family.
A one-family dwelling is:
A detached building containing only one dwelling unit for exclusive use by one family.
Plainly the Cherney house meets the ordinance definition of dwelling unit; there is no question that the five inhabitants constitute a family. State v. Baker, 81 N.J. 99 (1979). The conclusions of the Board of Adjustment, however, were that
... the customary design, floor plan and use of a single family home anticipates the existence of one kitchen. * * * A common characteristic of all single family homes is the existence of one kitchen. The Board finds that based upon the testimony of the applicant, that [sic] the design and layout of the home is such that it is being operated as a two-family home and the intention of the applicants is to create a two-family home even though the applicants are related by blood. The Board concluded that the parents of the applicant are residing on the first floor level of the home, while the applicant and her family reside on the second floor of the home. The Board does believe that there does exist interaction and exchange between the family members through the use of the common stairs, however, they feel that the increased number of residents at the premises, coupled with additional automobiles, etc. is such to be discouraged and the potentiality of the premises being converted into a two-family dwelling unit is significant enough to intercept this application and compel its reversion to a single family home.
A threshold issue is the standard of review appropriate to test the Board's determination that the installation of a second kitchen renders plaintiffs' home an illegal two-family house. There were no disputed facts, and the Board's determination was not reached upon a choice between factual contentions. For that reason, the rule that we uphold the factual determinations of an administrative agency if they are supported by sufficient credible evidence is not apposite. Cf. Rowatti v. Gonchar, 101 N.J. 46, 51 (1985). Also, what we are reviewing is not an exercise of the Board's expert discretionary judgment, as in the case of the grant or denial of a variance, see Kramer v. Bd. of Adjust., Sea Girt, 45 N.J. 268 (1965), but rather its reading of an ordinance and its application to an *145 undisputed state of facts. See Jantausch v. Borough of Verona, 41 N.J. Super. 89, 96 (Law Div. 1956), aff'd, 24 N.J. 326 (1957). Thus, we are guided by the traditional rule that the interpretation of legislative enactments is a judicial function, and not a matter of administrative expertise. Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 93 (1973). Nothing in the 1984 amendment to N.J.S.A. 40:55D-70b affects this conclusion.[1]
The Board of Adjustment argues that this case is controlled by Rowatti v. Gonchar, 101 N.J. 46 (1985). The issue there was very like the one confronting us. The Gonchars owned a home in a district in which two-family houses were prohibited. To accommodate Mrs. Gonchar's mother, they sought to build an addition to the home. The zoning officer ruled it illegal. The Gonchars appealed to the Board of Adjustment, which ruled that the addition transformed the home into a two-family house.
The proposed addition was to be built on the opposite side of an existing garage. It physically transformed the home into a *146 two-family house, according to a realtor. It would require its own new furnace and hot water heater. It would contain its own entry, foyer, a separate bedroom, living room, full bathroom, utility room and a kitchen larger than the one in the original house. The zoning ordinance defined a one-family dwelling as a "separate building designed for or occupied exclusively by one (1) family," and a multiple dwelling as a "building designed [for] or occupied by more than one (1) family." Rowatti, 101 N.J. at 50-51.
The New Jersey Supreme Court upheld the Board's determination that the addition would convert the Gonchar's home into a prohibited multiple dwelling. The Court explained:
First, with its separate kitchen, boiler, bathroom, heating system, and entrance-way, the addition can function independently from the original residence. Second, there is the closely-related factor that because of its design and physical appearance, the addition may impair the intent and purpose of the zoning plan for the entire area around Briarwood Lane. Third, the owners themselves contemplate an arrangement that would provide Mrs. Gonchar's mother with the opportunity to live and cook separately from the rest of the family whenever she so desires. Finally, as a matter of judicial review, local boards of adjustment must be accorded great latitude in determining facts that may adversely affect a municipality's entire zoning scheme. [101 N.J. at 55].
The present situation is different in significant ways. The portion of the Cherney home occupied by Mary's parents is an integral part of the premises as originally designed and built. There are no separate entrances or heating systems. There are no doors that separate and isolate one area from the other. Physically, the house retains its appearance as a one-family house. Although Mary's parents could arrange to live separately, they do not in fact do so. Rather, the "whole family" ordinarily interacts together. Finally, the Matawan zoning ordinance differs significantly. In Rowatti, the ordinance defined a multiple dwelling as one designed for or occupied by more than one family. The design itself could create a violation, without regard to current occupancy by only one family. Here, the zoning ordinance is incapable of that interpretation.
*147 The Board of Adjustment does not dispute that the Cherney house is now occupied by only one family. It is concerned with the easy opportunity created by the second kitchen for clandestine conversion of the house to two-family occupancy. A neighboring objector before the Board was asked, "Do you think it is a two-family house?" She replied, "I think it will be a two-family house." (Emphasis supplied.) The Board's counsel advised the Board "to factor in the way the house is designed. I think you have to consider its potential for conversion. I think there is a legitimate interest to the municipality to prohibit a future conversion. That is not to say the Cherneys are operating it presently as a two-family. I don't think there is evidence to suggest that they're operating or using the house except as a one-family...." The Board's resolution explained its difficulties with the application:
... The Board finds that based upon the testimony of the applicant, that the design and the layout of the home is such that it is being operated as a two-family home and the intention of the applicants is to create a two-family home even though the applicants are related by blood. * * * the increased number of residents at the premises, coupled with additional automobiles, etc. is such to be discouraged and the potentiality of the premises being converted into a two-family dwelling unit is significant enough to intercept this application and compel its reversion to a single family home.
We do not question any of the basic fact findings of the Board. Our problem is with their legal consequences. On the one hand, the Board wishes to discourage an increased number of residents and automobiles, a concern which would not bar use of a similar four-bedroom house by a large family using one kitchen. On the other hand, the Board is worried about "the potentiality" of conversion into a two-family house, a worry which can be met by adequate local enforcement and an alert neighborhood. Here, present occupancy is by one family whose members maintain constant significant contacts in the home. The addition of a second kitchen, without more, does not create a two-family house. See Baskin v. Zoning Bd. of Appeals of Ramapo, 40 N.Y.2d 942, 390 N.Y.S.2d 412, 358 N.E.2d 1037 (1976). What future conversion might produce is not today's *148 problem. See Guttman v. Borough of Bradley Beach, 15 N.J. Super. 409, 411 (App.Div. 1951); Wildlife Preserves, Inc. v. Poole, 84 N.J. Super. 159, 164 (App.Div. 1964).
We share the concern expressed by both the majority and minority in Rowatti, 101 N.J. at 55 and 63-64, for the family dilemmas created by increasing life expectancies and escalating housing costs. Multi-generational residential patterns were once the norm. They benefit both young and old. The law should not unnecessarily discourage families who want to accommodate their older members while preserving a reasonable degree of independent living. The danger of future conversion to illegal use creates legitimate concern. However, where multi-generational family accommodations are not barred by valid local ordinance provisions, future dangers should not serve to prohibit socially sound and humane patterns of housing use.
Affirmed.
NOTES
[1] In Alston v. Englewood Adj. Bd., 216 N.J. Super. 221 (Law Div. 1986), the Law Division held that a 1984 change in statutory wording abolished the Jantausch-Mayflower Securities rule. We disagree and therefore disapprove of that portion of Alston. Before 1984, N.J.S.A. 40:55D-70b authorized boards of adjustment to

[h]ear and decide in accordance with the provisions of any such ordinance, requests for interpretation of the ... ordinance ... in accordance with this act.
The 1984 amendment deleted "in accordance with the provisions of any such ordinance," leaving the following:
[h]ear and decide requests for interpretation of the ... ordinance ... in accordance with this act.
The legislative statement says the purpose of the amendment was to make the Board's interpretation power "as clearly a statutory power of the board as is the variance power." The change thus serves to clarify that the interpretation power is created by the statute and does not depend upon authorization of its exercise by the local ordinance. The amendment has no effect on the manner in which administrative interpretation of ordinance provisions is to be judicially reviewed.