974 A.2d 1134 (2009)
408 N.J. Super. 345
D. LOBI ENTERPRISES, INC., Plaintiff-Respondent/Cross-Appellant,
v.
PLANNING/ZONING BOARD OF THE BOROUGH OF SEA BRIGHT, Defendant, and
David J. Desio, Defendant/Intervenor-Appellant/Cross-Respondent.
DOCKET NO. A-5718-07T2.
Superior Court of New Jersey, Appellate Division.
Argued May 27, 2009.
Decided July 31, 2009.
*1136 Michael R. Leckstein argued the cause for appellant/cross-respondent (Leckstein & Leckstein, L.L.C., attorneys; Marc A. Leckstein, Little Silver, on the brief).
Thomas J. Hirsch, Ocean, argued the cause for respondent/cross-appellant.
Before Judges WINKELSTEIN, GILROY and CHAMBERS.
The opinion of the court was delivered by
CHAMBERS, J.A.D.
At issue is whether seven or nine members of a planning board, when acting as a board of adjustment pursuant to N.J.S.A. 40:55D-25(c), may vote on a "d" variance application under N.J.S.A. 40:55D-70(d). If, indeed, only seven members may vote, we then must decide whether, under the facts in this case, the defendant Board abused its discretion in denying the application for a "d" variance.
The voting question arises from the intersection of N.J.S.A. 40:55D-70(d), providing that five votes are needed to approve a "d" variance, and N.J.S.A. 40:55D-25(c), allowing a nine member municipal planning board to serve as a board of adjustment even though municipal boards of adjustment created pursuant to N.J.S.A. 40:55D-69 have seven members. After analyzing the statutes in light of the Legislature's intent, we conclude that when a "d" variance application comes before a planning board serving as a board of adjustment pursuant to N.J.S.A. 40:55D-25(c), the Class I and Class III members, who are prohibited by the statute from considering the application, may not be replaced by alternates. As a result, a board will be reduced to seven members, and the usual five out of seven votes will be required to approve a "d" variance.
Since the applicant in this case failed to obtain the requisite five out of seven votes, *1137 the Board denied the "d" variance application. While the trial court correctly concluded that only seven members could vote on the application, it found the Board's denial of the variance to be arbitrary, capricious, and unreasonable and overturned that decision. In our review of the record, however, we find no abuse of discretion by the Board. Accordingly, we affirm the trial court's ruling on the voting question; we reverse its order overturning the Board's decision; and we reinstate the Board's denial of the "d" variance.

I
The Surfrider Beach Club, owned by plaintiff D. Lobi Enterprises, Inc. (the Club), is located in the B-3 zoning district in the Borough of Sea Bright. While beach clubs are a permitted use in the zone, restaurants are not. In 1992, the Club received a variance allowing it to operate a restaurant at that location. In 2005, the Club applied for a "d" variance to expand this nonconforming use.
The application came before the Planning Board of the Borough of Sea Bright, sitting as the Board of Adjustment (the Board) pursuant to N.J.S.A. 40:55D-25(c), and extensive hearings were held. The mayor and council member who served on the Board as the Class I and Class III members respectively were precluded from participating in the consideration of the "d" variance application by N.J.S.A. 40:55D-25(c). Due to various recusals, the Board was left with eight members, including two alternates. The Club maintained that all eight should vote so that an affirmative vote of five of the eight would pass the variance. The Board's counsel advised that only seven may vote, so the second alternate should not participate in the vote.
In order to preserve the issue on appeal, the second alternate was allowed to vote along with the other seven Board members. The vote was five to three in favor of the application. However, when the second alternate's vote was not counted, the vote was four to three in favor of the application, thereby falling short of the five affirmative votes needed to pass a "d" variance under N.J.S.A. 40:55D-70(d). As a result, the Board denied the variance.
The Club filed this action in lieu of prerogative writs in the Law Division, challenging the denial. David J. DeSio, a neighboring landowner, objector, and member of the Board who had recused himself when the application was heard, intervened in the case. The trial court held that the vote by seven members was proper and that alternates could not replace the mayor and council member for a vote on a "d" variance application. The trial court, however, reversed the Board's decision on the variance, concluding that it should have been granted.
The intervenor appeals the trial court's decision reversing the denial of the variance. The Club cross-appeals the trial court's decision on the voting issue.

II
Because the resolution of the voting question is a matter of statutory interpretation and is thus a legal question, we owe no special deference to the decision of the trial court or the Board. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995) (noting that the appellate court owes no "special deference" to the trial court's legal conclusions); N.Y. SMSA, L.P. v. Bd. of Adjustment of Weehawken, 370 N.J.Super. 319, 331, 851 A.2d 110 (App.Div.2004) (stating that "conclusions of a municipal board on matters of statutory interpretation are not entitled to any particular deference").
*1138 Our role in interpreting statutes is to discern the Legislature's intent. Marshall v. Klebanov, 188 N.J. 23, 36, 902 A.2d 873 (2006). In doing so, we accord to the words used "their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole." DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005) (citations omitted). If the statute is clear based on the usual and well understood meaning of its language, then "the court's sole function is to enforce the statute in accordance with those terms." Middletown Twp. P/b/a Local 124 v. Twp. of Middletown, 193 N.J. 1, 12, 935 A.2d 516 (2007) (quoting Phillips v. Curiale, 128 N.J. 608, 618, 608 A.2d 895 (1992)). When the meaning of the statute is unclear or ambiguous, then we must look to extrinsic evidence, including legislative history to discern its meaning. Ibid. Further, "when `a literal application of the language used would lead to results incompatible with the legislative design,' we are obligated `to give effect to the obvious purpose of the Legislature.'" Marshall v. Klebanov, supra, 188 N.J. at 37, 902 A.2d 873 (quoting New Capitol Bar & Grill Corp. v. Div. of Employment Sec., 25 N.J. 155, 160, 135 A.2d 465 (1957)).
We begin our analysis with the statutory scheme governing voting for "d" variances. Municipal boards of adjustment created under N.J.S.A. 40:55D-69 have seven members, and they may have up to four alternates. The alternates "may participate in all matters," but are not allowed to vote unless a regular member is absent or disqualified in which case an alternate will replace that person. N.J.S.A. 40:55D-69.
The statutes provide that the affirmative vote of at least five members of a board of adjustment is necessary to grant a "d" variance. N.J.S.A. 40:55D-70(d); see also Assembly Municipal Government Committee Statement to S.1125 (Jan. 25, 1979) (enacted as L. 1979, c. 216) (explaining that N.J.S.A. 40:55D-70 was being amended in order to, among other things, "clarify that five affirmative votes (out of a total of seven members on the municipal board of adjustment) are necessary to approve a `d' variance").[1] Thus, for a seven member municipal board of adjustment, five out of seven votes is necessary to approve a "d" variance. See N.J.S.A. 40:55D-69, -70(d). In the case of a regional board created pursuant to N.J.S.A. 40:55D-77, a two-thirds vote of the full membership is required to approve a "d" variance. N.J.S.A. 40:55D-70(d). The statute setting forth these voting requirements states:
A variance under this subsection shall be granted only by affirmative vote of at least five members, in the case of a municipal board, or two-thirds of the full authorized membership, in the case of a regional board, pursuant to article 10 of this act.
[N.J.S.A. 40:55D-70(d).]
Other actions by a board of adjustment, including approval of other variances, do not have this heightened voting requirement. See N.J.S.A. 40:55D-70; see also William M. Cox, New Jersey Zoning and Land Use Administration § 2-7.3 at 44 (2009) (noting that with the exception of the approval of "d" variances, "[a]ll Board actions may be taken by a majority vote of a quorum").
*1139 This statutory requirement for a super majority of votes to approve a "d" variance is consistent with the "strong legislative policy favoring land use planning by ordinance rather than by variance," so that a "d" variance is considered "the exception rather than the rule." Cox, supra, § 7-4.1 at 180; see Sponsor Statement to A.1169 (Jan. 30, 1984) (enacted as L. 1984, c. 20) (stating that "[f]or truly major variances the five-vote requirement is justified"); see also Medici v. BPR Co., 107 N.J. 1, 5, 526 A.2d 109 (1987) (noting the "legislature's apparent objective of encouraging municipalities to make zoning decisions by ordinance rather than by variance").
Municipalities with nine member planning boards have the option of permitting their planning boards to exercise the powers of a board of adjustment, rather than creating separate zoning boards of adjustment. N.J.S.A. 40:55D-25(c). The municipalities exercising this option for a consolidated board may appoint alternates to their boards who may vote when regular members are absent or disqualified from doing so. N.J.S.A. 40:55D-23.1 (providing that "[a]lternate members may participate in all matters but may not vote except in the absence or disqualification of a regular member of any class"). Sea Bright has exercised this option. Its nine member planning board also serves as its zoning board of adjustment, and it has appointed alternates as allowed by statute.
The statute expressly provides that, when a planning board sitting as a board of adjustment hears an application for a "d" variance, "the Class I and the Class III members shall not participate." N.J.S.A. 40:55D-25(c). The Class I member is the mayor or his designee, or in the council-manager or municipal manager form of government it may be the manager; the Class III member is a member of the governing body. N.J.S.A. 40:55D-23. The statute striking the Class I and Class III members from a board when hearing "d" variances, N.J.S.A. 40:55D-25(c), is silent on whether alternates should be substituted for these stricken members. It merely says:
c. (1) In a municipality having a population of 15,000 or less, a nine-member planning board, if so provided by ordinance, shall exercise, to the same extent and subject to the same restrictions, all the powers of a board of adjustment; but the Class I and the Class III members shall not participate in the consideration of applications for development which involve relief pursuant to subsection d. of section 57 of P.L.1975, c. 291 (C.40:55D-70).
(2) In any municipality, a nine-member planning board, if so provided by ordinance, subject to voter referendum, shall exercise, to the same extent and subject to the same restrictions, all the powers of a board of adjustment; but the Class I and the Class III members shall not participate in the consideration of applications for development which involve relief pursuant to subsection d. of section 57 of P.L.1975, c. 291 (C.40:55D-70). [N.J.S.A. 40:55D-25(c).]
The question of whether the alternates replace the two stricken members so that the consolidated board remains nine members strong or whether it is reduced to seven members has been pending for some time. See Engleside at W. Condo. Ass'n v. Land Use Bd. of Beach Haven, 301 N.J.Super. 628, 633-34, 694 A.2d 328 (Law Div.1997) (discussing but not resolving the question); Cox, supra, § 2-8 at 53-54 (discussing this "interesting circumstance" and suggesting that legislative clarification is necessary).
Some boards reportedly allow the alternates to sit, but require a vote of six out of nine to approve the variance. Cox, supra, § 2-8 at 54. This approach is consistent *1140 with the spirit of the statute that requires heightened approval for "d" variances. However, as Cox notes, no statutory authority exists for requiring six rather than five votes, and proportionately five out of seven is a tougher standard than six out of nine. Cox, supra, § 2-8 at 54; see also Engleside at W. Condo. Ass'n v. Land Use Bd. of Beach Haven, supra, 301 N.J.Super. at 633, 694 A.2d 328 (where Judge Serpentelli stated that, while requiring an enhanced vote for a nine member board is consistent with the Legislature's intent, to reach this result "the court would be compelled to draw that inference from present legislation and, in effect, add a provision to N.J.S.A. 40:55D-70(d)").
As Cox has explained, presumably one reason the Legislature excluded the Class I (mayor) and Class III (member of governing body) members from voting on a "d" variance is because a board's action on a "d" variance may be appealed to the governing body, if permitted by ordinance, and without this exclusion, the mayor and the member of the governing body would be reviewing their earlier decisions. See Cox, supra, § 2-8 at 53-54; see also N.J.S.A. 40:55D-17(a) (allowing appeal to the governing body).
A second reason to exclude the Class I and Class III members is to reduce the size of a board to seven. Cox, supra, § 2-8 at 53-54. If the statute is construed to require a consolidated board to remain at seven members once the Class I and Class III members are excluded, then it would become the size of an ordinary zoning board of adjustment hearing a "d" variance application. In this way, the proportionate vote of a board necessary to pass a "d" variance, namely five out of seven votes, would be the same whether the applicant appears before a regular seven person board of adjustment or a planning board sitting as a board of adjustment.
The alternative interpretation of the statute, namely that alternates substitute for the Class I and Class III members, is unsatisfactory. If, as the Club argues, only a majority vote, that is five out of nine (or eight) is necessary to approve the "d" variance, then the proportion of votes necessary to obtain a "d" variance would be decreased, contrary to the Legislature's intention to make the "d" variance, with its potential to undermine the land use planning of the zoning ordinance, more difficult to obtain. While requiring a minimum of six votes would be in keeping with the legislative purpose, to do so, would entail writing that provision into the statute.
Accordingly, the most harmonious way to read the statutory provisions is to conclude that the Legislature was silent on the question of substituting alternates for the Class I and Class III members, because it intended to reduce the consolidated board to seven members so that the usual five out of seven votes would be required to approve a "d" variance. Where a super majority is required for seven person municipal boards and regional boards, no reason exists for the Legislature to impose a lesser burden upon a similar application before a consolidated board. Thus, if the Legislature had intended alternates to replace the Class I and Class III members, to be consistent, it presumably would have imposed a supermajority voting requirement. The fact that it did not do so indicates its intent that with the withdrawal of the Class I and Class III members, a board is reduced to seven members, so that five out of seven votes are needed to approve the "d" variance.
As indicated by Cox, reducing a board's membership to seven members "preserves the statutory scheme of N.J.S. 40:55D-70 requiring the affirmative vote of five members of the statutory seven member board *1141 to grant a d variance." Cox, supra, § 2-8 at 54. He further notes that "[a]llowing the seating of alternates would give an applicant for a subsection d variance an unfair advantage, needing only five out of nine votes instead of the five out of seven votes contemplated by the statute." Ibid.
In summary, when an application for a "d" variance comes before a nine member planning board sitting as a board of adjustment in accordance with N.J.S.A. 40:55D-25(c), the Class I and Class III members may not hear the application, and their positions may not be filled by alternates. A board is thereby reduced to seven members, and five affirmative votes are necessary to approve the "d" variance.

III
We next address the dispute regarding the merits of the "d" variance application. Among other reasons, a "d" variance may be granted for the expansion of a nonconforming use. N.J.S.A. 40:55D-70(d)(2). To obtain a "d" variance, the applicant must satisfy the positive and negative criteria. Sica v. Bd. of Adjustment of Wall, 127 N.J. 152, 156, 603 A.2d 30 (1992).
To satisfy the positive criteria, the applicant must show that "special reasons" warrant the variance. N.J.S.A. 40:55D-70(d); Sica v. Bd. of Adjustment of Wall, supra, 127 N.J. at 156, 603 A.2d 30. "Special reasons" may be defined by reference to the purposes of zoning set forth in the Municipal Land Use Law at N.J.S.A. 40:55D-2. Burbridge v. Twp. of Mine Hill, 117 N.J. 376, 386-87, 568 A.2d 527 (1990). The cases have recognized three categories of special reasons: (1) the proposal is for an inherently beneficial use; (2) conformity with the zoning ordinance would cause undue hardship to the property owner; and (3) "where the use would serve the general welfare because `the proposed site is particularly suitable for the proposed use.'" Saddle Brook Realty, L.L.C. v. Twp. of Saddle Brook Zoning Bd. of Adjustment, 388 N.J.Super. 67, 76, 906 A.2d 454 (App.Div.2006) (quoting Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 323, 704 A.2d 1271 (1998)).
To meet the negative criteria, the applicant must show that the variance "can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70(d); Sica v. Bd. of Adjustment of Wall, supra, 127 N.J. at 156, 603 A.2d 30. When considering whether the variance will cause substantial detriment to the public good, the focus is on the impact of the variance on neighboring properties. Cox, supra, § 8-2.2 at 247.
In 1992, the Club received a "d" variance to permit a restaurant on the premises in conjunction with the beach club. In the findings set forth in its 1992 resolution, the Board stated that banquets at the Club would not exceed 130 people, although that limitation was not imposed as a condition of the variance. The Club has a snack bar on the first floor of its facilities and a restaurant and banquet facility on the second floor.
In 2005, the Club sought the "d" variance at issue in this case in order to expand its non-permitted use. During the hearing process, it made modifications to its proposal. In its final proposal, the Club sought to add office and bathroom areas, expand its existing banquet facilities by enclosing and expanding an existing deck area, add a second floor deck, install an elevator, and construct handicapped bathrooms on the second floor. An additional 300 square feet would be added to the banquet area.
The expansion of the dining area requires a "d" variance. Under the proposal, *1142 the legal occupancy of the banquet-restaurant facility would be 185, although the proposed table arrangement would accommodate 184 people. The current legal occupancy is 165. The Club holds about forty banquets during the season between Memorial Day and Labor Day.
The application faced opposition from certain neighbors in the area who complained of noise and parking problems generated by the Club. They expressed concern that an expansion of the nonconforming use will aggravate these problems.
In denying the application, the Board found that the Club had failed to demonstrate special reasons warranting the variance, and that an expansion of the nonconforming use would be detrimental to the surrounding neighborhood. It stated in its resolution:
[T]he increased activity level will increase the noise level, including noise from boisterous guests entering and departing the banquet event, car doors slamming, buses idling and pulling in and out and music and weddings on the beach and that such increase would have a negative impact on the neighboring residential uses.
Rejecting testimony that the parking offered by the Club would be sufficient, the Board went on to state in its resolution that:
The Board is very familiar with the activities and traffic patterns generated and occasioned by the operation of beach clubs in Sea Bright. Although the applicant suggested that the banquet facility would only be utilized after beach club members had vacated the premises, testimony from objectors as well as the experience and knowledge of the Board is that beach club members often linger at the beach club to enjoy the evening hours and accordingly there would be an overlap of banquet guests and beach club members utilizing the existing parking area.
The trial court reversed this determination, concluding that the Board's decision was arbitrary, capricious, and unreasonable. It found that special reasons were present, noting that the proposed expansion would be more aesthetically pleasing because an exposed air conditioning structure would be enclosed, noise would be reduced by enclosing the deck, and the use of the waterfront property would be optimized. The trial court concluded that the proposal would not be substantially detrimental to the neighboring properties, that denial of the variance would not correct complaints from neighbors about the existing facility, and that it would not result in a significant increase in the intensity of the property's use. Finding that any detriment was substantially outweighed by the benefits of the proposed use, the trial court overturned the Board's determination.
In our review, we apply the same standard as the trial court does when evaluating the decision of a board. N.Y. SMSA, L.P. v. Bd. of Adjustment of Weehawken, supra, 370 N.J.Super. at 331, 851 A.2d 110. We accord "substantial deference" to the decisions of a municipal board. Ibid. A board of adjustment's determinations are presumed to be valid and will only be overturned if they are unsupported by the record and "so arbitrary, capricious, or unreasonable as to amount to an abuse of discretion." Ocean County Cellular Tel. Co. v. Twp. of Lakewood Bd. of Adjustment, 352 N.J.Super. 514, 521-22, 800 A.2d 891 (App.Div.), certif. denied, 175 N.J. 75, 812 A.2d 1108 (2002). We may not substitute our judgment for that of a board. Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment of W. Windsor Twp., 172 N.J. 75, 81, 796 A.2d 247 (2002).
The New Jersey Supreme Court has recognized that boards of adjustment *1143 "possess special knowledge of local conditions and must be accorded wide latitude in the exercise of their discretion." Sica v. Bd. of Adjustment of Wall, supra, 127 N.J. at 167, 603 A.2d 30. Even if we have some doubt about the wisdom of a board's action or some part of it, we may not overturn its decision absent an abuse of discretion. Medici v. BPR Co., supra, 107 N.J. at 15, 526 A.2d 109. In this case, since the Board denied the variance, we must accord its decision with even greater deference. See N.Y. SMSA, L.P. v. Bd. of Adjustment of Weehawken, supra, 370 N.J.Super. at 331, 851 A.2d 110 (stating that "[b]ecause variances should be granted sparingly and with great caution, courts must give greater deference to a variance denial than to a grant").
In light of this standard, we reverse the decision of the trial court and reinstate the decision of the Board denying the variance. The evidence indicates that the proposal will increase the legal occupancy of the facility from 165 to 185, and that the current operation disturbs the neighborhood. While the Club argued and the trial court concluded that the proposal to enclose the deck would reduce noise, thereby constituting a special reason, the record contained substantial evidence that much of the disturbing noise was generated by activities outside the building. Even assuming that the trial court correctly found additional positive criteria, the record contained sufficient proofs to support a finding that the negative criteria had not been satisfied and that the detriments outweighed any benefits in the proposal. The increased intensity of use proposed by the applicant may reasonably be expected to exacerbate the existing problems in the neighborhood. We conclude that the Board's decision was supported by the record, and we must defer to its knowledge of the area and local conditions. See Sica v. Bd. of Adjustment of Wall, supra, 127 N.J. at 167, 603 A.2d 30. We further note that the Board's resolution states that the applicant may construct the proposed elevator and handicapped bathroom facilities on its second floor without expanding the banquet facilities.
The decision of the trial court is affirmed in part and reversed in part. We reinstate the Board's decision denying the variance.
NOTES
[1] Thereafter, N.J.S.A. 40:55D-25 was amended to allow a nine member planning board in a municipality with a population of 2,500 or less to serve as the board of adjustment. L. 1985, c. 516, § 8. Subsequent amendments increased the population to 10,000 and then 15,000. L. 1994, c. 186, § 1; L. 1999, c. 27, § 1. Further amendments extended this option, subject to voter referendum, to other municipalities. L. 1996, c. 113, § 8.