**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3114-14T3

DR. AURORA BAIRAN,

    Plaintiff-Respondent,

v.

BOROUGH OF CLOSTER ZONING
BOARD OF ADJUSTMENT,

    Defendant-Appellant.

_____

Argued October 26, 2016 — Decided November 21, 2017

Before Judges Fuentes, Simonelli and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-4268-14.

Michael B. Kates argued the cause for appellant (Kates Nussman Rapone Ellis & Farhi, LLP, attorneys; Mr. Kates, of counsel and on the brief).

Andrew S. Kohut argued the cause for respondent (Wells, Jaworski & Liebman, LLP, attorneys; Mr. Kohut, on the brief).

The opinion of the court was delivered by

GOODEN BROWN, J.A.D.

Defendant Borough of Closter Zoning Board of Adjustment (Board) appeals from a February 26, 2015 Law Division order, which reversed the Board's denial of plaintiff Aurora Bairan's use variance application for her property located on Harrington Avenue in Closter. After reviewing the record and applicable legal principles, we reverse.

I.

We glean the following facts from the record. The property is a long, narrow lot, measuring forty feet in width and 224 feet in depth. It contains three separate buildings located one behind the other, designated as Building A, B, and C. Building A fronts along Harrington Avenue and has two second-floor residential units, a first-floor commercial storefront tenant facing the street, and, in the rear, a first-floor 368 square foot residential unit which is the subject of this appeal. Building B is set back approximately three to four feet behind Building A and has two residential units. Building C is a single-family dwelling located in the rear of the property. In total, there are six residential units and one commercial space on the property. Between Building B and C is a paved area, which is used as a parking area for the tenants.

Plaintiff has owned the property since 1985 and has continuously used it in the same manner in which it had been used

well before her ownership. On October 26, 2011, following an investigation into various zoning deficiencies, the Borough's Zoning Officer denied plaintiff's continued use of the property in the same manner it had been used, and directed plaintiff to file an application with the Board for relief. Pursuant to N.J.S.A. 40:55D-70(a), plaintiff appealed the Zoning Officer's decision to the Board and sought either confirmation that the existing uses of multiple structures on one lot were legally existing, nonconforming structures and uses pursuant to N.J.S.A. 40:55D-68, or, in the alternative, use and bulk variances pursuant to N.J.S.A. 40:55D-70(d), sanctioning the existing uses and structures as they had existed since at least 1985 when plaintiff acquired the property.

On December 18, 2013, the Board voted to sanction the three buildings and five of the six residential units on the ground that they predated the Borough's 1940 zoning ordinance, and their nonconforming status was therefore protected under N.J.S.A. 40:55D-68. The Board noted that the property is located in the Borough's District No. 3 "Business Area[,]" which permits "one- and two-family" residential dwellings "as well as retail commercial uses." Although District No. 3 "clearly permits and anticipates mixed commercial/residential buildings[,]" no "more than two" residential units are permitted "in one building, with

or without a commercial use as well." Therefore, the Board concluded that while "[t]he one[-]family use" in Building C and "[t]he two-family use" in Building B were "permitted[,]" Building A was "non-conforming based on the presence of three [residential] dwellings[,]" which is prohibited in that zone. Accordingly, as to the 368 square foot first-floor residential unit in Building A, the Board unanimously upheld the Zoning Officer and denied the unit historical recognition because plaintiff was unable to provide evidence of its pre-zoning existence.

The following month, plaintiff requested a use variance under N.J.S.A. 40:55D-70(d)(1) to allow her to continue to use the unit as the third residential unit in Building A and sixth residential unit on the property. Plaintiff also sought a parking space variance, allowing her to provide only seven parking spaces where sixteen were required, and approval of an amended site plan for improvements recommended by the Board.

At the January 15, 2014 hearing on the use variance, plaintiff testified in support of her application along with two expert witnesses, Michael Hubschman and Steve Lydon. There were no objectors at the hearing. Plaintiff testified that during her ownership of the property, the residential unit had been regularly occupied without any complaints regarding nuisances, parking, or ingress and egress of the property. Further, plaintiff received

no inquiries about using the unit for commercial purposes and did not believe the unit was a suitable space for commercial use given its location.

Hubschman, a licensed civil engineer, opined that due to the narrow passageway for vehicles to access the building, the unit is better suited for residential purposes to avoid the additional traffic attendant to commercial use. Hubschman acknowledged, however, that there was a municipal parking lot approximately 100 feet from the property and street parking available. In addition, after describing how the unit is separated from the rest of Building A, Hubschman explained that combining the unit with the existing commercial space was illogical because it could not be done without removing and relocating the existing stairwell leading to the second floor, or remodeling the existing foyer. He admitted, however, that it was possible to have "two side-by-side stores[.]" Much of Hubschman's rationale supporting the continued residential use of the unit was predicated on the fact that the unit had functioned in that capacity for over thirty years.

Lydon, plaintiff's second expert witness and a licensed professional planner, opined that the residential use of the unit was "a better fit[,]" and promoted Smart Growth principles by providing affordable housing and opportunities to live near the Borough's downtown and public transportation. According to Lydon,

5

the "master plan" and the "land use plan" were reexamined in 2008, "and the reexamination report recommend[ed] allowing residential apartments over ground floor retail as an inducement to improve and retenant ground floor retail spaces." Lydon acknowledged that the current application does not "squarely meet the recommendation of the master plan because it is a first floor residential space . . . , not a second floor[.]" However, he believed that "the overall intent of having mixed uses in downtown is furthered by this application[,]" even if "not exactly as laid out by the [B]orough."

Lydon disagreed with the Board Chairman that the "quality of life" issues associated with a "first floor" apartment "on [M]ain [S]treet[,]" including engine fumes, "traffic going by[,]" "noise," "security concerns," and the elevated "density factor," were legitimate concerns. Lydon explained that although Building A is "the only building that's readily visible from the street[,]" the unit's location in the rear of Building A gives it no presence along Harrington Avenue. According to Lydon, while the lack of street presence is not suitable for commercial purposes, it is ideal for residential use.

Lydon also testified that given the unit's proximity to the five other residential units, using the unit as a residential space was compatible with all of the other uses in the rear of the

property.  Lydon went on to say that converting the unit to commercial space would most likely exacerbate internal traffic and safety concerns, whereas the residential use limited the amount of traffic generated.  Lydon also agreed with Hubschman that, "from a site layout perspective[,]" the unit could not be reasonably adapted into a "commercial space[,]" and, given the glut of commercial space available in the Borough, transforming the unit into commercial space, with its significant physical constraints, would not benefit the Borough.  Lydon pointed to the property's "very high occupancy rate" to "demonstrate[] a need for this type of use, a small apartment, in this particular location."

Lydon opined that overcoming the physical limitations inherent in the building to convert the space to commercial use would cause "undue hardship, which is a basis under the Municipal Land Use Law for the granting of a use [variance] application[.]" Lydon concluded that allowing another residential unit would have little to no impact on the neighborhood given its compatibility with the surrounding area, particularly since residential uses are already permitted in the zone, the property was developed long before the adoption of the Borough's Zoning Ordinance or Master Plan, and residential use "work[ed] well" for the last thirty years.

Following the hearing, the use variance failed to achieve the super-majority of five votes mandated by N.J.S.A. 40:55D-70(d). The vote was four in favor of granting the use variance and three against. Because the use variance was denied, the Board did not vote on the parking space variance or the amended site plan. The memorializing resolution, adopted on April 16, 2014, identified the exhibits, summarized some of the testimony, and recited the applicable law. The resolution acknowledged that plaintiff proffered proofs through Lydon's testimony that her "application advances the promotion of the general welfare by providing sufficient space in appropriate locations for a variety of uses, including residential and commercial[.]" However, the resolution indicated the Board could not "conclude[] that [plaintiff] would face 'undue hardship'" if it "disallowed" the ground floor residential unit in Building A. On the contrary, because Building A had "none of the[] deficiencies" present in Buildings B and C that would preclude commercial use, it could "accommodate a conforming commercial use[,]" and "it is on this basis that three Board members opposed a ground floor residential use" in Building A.

On May 6, 2014, plaintiff filed a complaint in lieu of prerogative writs in the Law Division challenging the Board's denial. The trial court conducted a bench trial on the record

8                                                    A-3114-14T3

below on December 8, 2014. On February 10, 2015, the court issued a written decision reversing the Board's denial of the use variance and entering judgment in favor of plaintiff. The court concluded that "the Board ha[d] not based its conclusions in the Resolution on evidence in the record." The court explained:

> In the instant matter, the court finds the Planning Board acted in an arbitrary, capricious and unreasonable manner regarding the [a]pplication. Further, plaintiff has met her burden under N.J.S.A. 40:55D-70. Plaintiff has demonstrated that she would suffer an undue hardship if she is compelled to make the unit suitable for commercial use. Also, the site is particularly suitable for residential use. The unit is not visible from the street[,] and residential use is compatible with other uses in the rear of the [p]roperty.

> Additionally, plaintiff has proven that residential use of the unit does not create a substantial detriment to the public good, and the intent and purpose of the zone plan and zoning ordinance will not be substantially impaired. There are no objecting neighbors or community members, and residential use is consistent with surrounding property use. Further, defendant has not presented any compelling evidence as to why a variance should not be granted in this instance. The unit has been utilized as an apartment for over thirty years, and it has not interfered with the nature or intent of the zoning ordinance or plan. No evidence has been presented by defendant proving a deleterious effect on the community. Furthermore, no evidence has been presented to support the findings made in the resolution. The decision of the Board must be based on evidence before it. Such was not done here.

The court entered a memorializing order on February 26, 2015, and this appeal followed.

II.

On appeal, the Board raises the following points[1] for our consideration:

POINT I

DUE DEFERENCE WAS NOT PAID TO THE BOARD.

POINT II

ON THE SINGULAR VOTE IN ISSUE, PLAINTIFF DID NOT MEET THE STATUTORY CRITERIA UNDER N.J.S.A. 40:55D-70(d)(1).

POINT III

THE TESTIMONY OF PLAINTIFF'S EXPERT WITNESSES CONCERNING THE PROHIBITIVE COST OF CONVERTING FROM RESIDENTIAL TO COMMERCIAL USE WERE[] "NET OPINIONS" AND THUS COULD BE IGNORED.

We begin with the standard of review. We apply the same limited standard of review as the trial court when reviewing a zoning board's decision to grant or deny a variance. Bressman v. Gash, 131 N.J. 517, 529 (1993); D. Lobi Enters., Inc. v. Planning/Zoning Bd. of Borough of Sea Bright, 408 N.J. Super. 345, 360 (App. Div. 2009). As such, "when a party challenges a zoning board's decision through an action in lieu of prerogative writs,

_____

[1] We have condensed the points raised by defendant for clarity.

10

the zoning board's decision is entitled to deference." <u>Kane Props., LLC v. City of Hoboken</u>, 214 <u>N.J.</u> 199, 229 (2013). "Its factual determinations are presumed to be valid[,] and its decision to grant or deny relief is only overturned if it is arbitrary, capricious or unreasonable." <u>Ibid.</u> (citing <u>Burbridge v. Twp. of Mine Hill</u>, 117 <u>N.J.</u> 376, 385 (1990)).

A "board's decisions enjoy a presumption of validity, and a court may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." <u>Price v. Himeji, LLC</u>, 214 <u>N.J.</u> 263, 284 (2013) (citing <u>Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment</u>, 172 <u>N.J.</u> 75, 81 (2002)). "[Z]oning boards, 'because of their peculiar knowledge of local conditions[,] must be allowed wide latitude in the exercise of delegated discretion.'" <u>Ibid.</u> (quoting <u>Kramer v. Bd. of Adjustment</u>, 45 <u>N.J.</u> 268, 296 (1965)). To that end, we extend even greater deference to a zoning board's decision to deny a variance in preservation of a zoning plan than to a decision to grant a variance. <u>Nextel of N.Y., Inc. v. Borough of Englewood Cliffs Bd. of Adjustment</u>, 361 <u>N.J. Super.</u> 22, 38 (App. Div. 2003). However, where the issue on appeal involves a purely legal question, this court affords no special deference to the trial court's or zoning board's decision, and instead must determine if the board

understood and applied the law correctly. See D. Lobi Enters., supra, 408 N.J. Super. at 351-52.

Under N.J.S.A. 40:55D-70(d)(1):

> The board of adjustment shall have the power to:
>
> . . . .
>
> In particular cases for special reasons, grant a variance to allow departure from . . . this act to permit: (1) a use or principal structure in a district restricted against such use or principal structure . . . . A variance under this subsection shall be granted only by affirmative vote of at least five members, in the case of a municipal board[.]

Where a zoning board has denied a variance, the applicant must prove that the evidence before the board was "overwhelmingly in favor of the applicant." Nextel, supra, 361 N.J. Super. at 38 (quoting Ne. Towers, Inc. v. Zoning Bd. of Adjustment, 327 N.J. Super. 476, 494 (App. Div. 2000)). "As is evident, the burden on a variance applicant is not insignificant[,]" Nuckel v. Borough of Little Ferry Planning Bd., 208 N.J. 95, 102 (2011), "because the grant of a use variance always represents an exception to the generally applicable zoning scheme[.]" Price, supra, 214 N.J. at 286.

An applicant seeking a use variance must demonstrate "special reasons" — commonly referred to as the positive criteria — why the

A-3114-14T3

variance should be granted.  N.J.S.A. 40:55D-70(d)(1). "Special

reasons" are those that promote the general purposes of zoning,

enumerated in N.J.S.A. 40:55D-2.  Burbridge, supra, 117 N.J. at

386 (citing Kohl v. Mayor of Fair Lawn, 50 N.J. 268, 276 (1967)).

"Special reasons" generally fall into one of three categories:

> (1) [W]here the proposed use inherently serves
> the public good, such as a school, hospital
> or public housing facility, see [Sica v. Bd.
> of Adjustment of Wall, 127 N.J. 152, 159-60
> (1992)]; (2) where the property owner would
> suffer "undue hardship" if compelled to use
> the property in conformity with the permitted
> uses in the zone, see Medici v. BPR Co., 107
> N.J. 1, 17 n.9 (1987); and (3) where the use
> would serve the general welfare because "the
> proposed site is particularly suitable for the
> proposed use."  [Smart SMR of N.Y., Inc. v.
> Borough of Fair Lawn Bd. of Adjustment, 152
> N.J. 309, 323 (1998).]
>
> [Saddle Brook Realty, LLC v. Twp. of Saddle
> Brook Zoning Bd. of Adjustment, 388 N.J.
> Super. 67, 76 (App. Div. 2006).]

An applicant for a use variance must also satisfy what are

known as the "negative criteria."  Specifically, an applicant must

show that the variance "can be granted without substantial

detriment to the public good," and that "the variance 'will not

substantially impair the intent and the purpose of the zone plan

and zoning ordinance.'"  Price, supra, 214 N.J. at 286 (quoting

N.J.S.A. 40:55D-70).  "The showing required to satisfy the first

of the negative criteria focuses on the effect that granting the

variance would have on the surrounding properties." Ibid. (citing Medici, supra, 107 N.J. at 22 n.12). "The proof required for the second of the negative criteria must reconcile the grant of the variance for the specific project at the designated site with the municipality's contrary determination about the permitted uses as expressed through its zoning ordinance." Ibid. (citing Medici, supra, 107 N.J. at 21). This requires, "in addition to proof of special reasons, an enhanced quality of proof and clear and specific findings by the board of adjustment that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance." Medici, supra, 107 N.J. at 21.

A zoning board "acts as a quasi-judicial body. As such, it is called upon to become involved in a weighing process, much like a court, before determining whether the positive and/or negative criteria have been met." Price Co. v. Zoning Bd. of Adjustment of Twp. of Union, 279 N.J. Super. 207, 209 (App. Div. 1994).

Here, defendant argues the court erred in concluding that the Board's "denial was arbitrary, capricious or unreasonable" and "unsupported in the record." We agree. The minority Board members opposed the variance because plaintiff failed to satisfy the affirmative criteria, specifically, undue hardship and site suitability. The Board members rejected plaintiff's assertion that overcoming the physical limitations inherent in the building

14

by relocating the stairwell or remodeling the foyer would cause undue hardship. That determination was supported by Hubschman's acknowledgement that it was possible to have "two side-by-side stores[.]" Proof of undue hardship requires proof "that the property is not reasonably adapted to a conforming use[.]" <u>Medici</u>, <u>supra</u>, 107 <u>N.J.</u> at 17 n.9. Plaintiff failed to make the requisite showing here.

Likewise, the Board members concluded that Building A was particularly well-fitted for an additional commercial, rather than residential, unit because it had none of the "deficiencies" present in Buildings B and C. According to Lydon, the fact that Buildings B and C were not visible from the street and had limited parking and vehicular access made those buildings particularly unsuitable for non-residential uses. In contrast, Building A had none of those deficiencies, making it suitable for non-residential use. While "almost all lawful uses of property can be said to promote the general welfare to some degree, . . . any application for a use variance based on the particularly suitable standard has always called for an analysis that is inherently site-specific." <u>Price</u>, <u>supra</u>, 214 <u>N.J.</u> at 288.

> Although the availability of alternative locations is relevant to the analysis, demonstrating that a property is particularly suitable for a use does not require proof that there is no other potential location for the

use[,] nor does it demand evidence that the project "must" be built in a particular location. Rather, it is an inquiry into whether the property is particularly suited for the proposed purpose, in the sense that it is especially well-suited for the use, in spite of the fact that the use is not permitted in the zone.

[Id. at 292-93.]

Here, plaintiff's proofs fell short of meeting that test, and the record supports the Board's rationale.

In short, plaintiff failed to show the necessary positive criteria and failed to overcome the presumption of validity afforded the Board's decision. We find adequate support in the record for the Board's conclusions and no support for the court's determination that the Board's decision was arbitrary, capricious, or unreasonable. Accordingly, we reverse the Law Division order and reinstate the Board's resolution denying the use variance. In light of our conclusion, we need not reach the Board's remaining contentions that the court erroneously shifted the burden of proof to defendant and that the Board was not required to accept the net opinions offered by plaintiff's experts.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16

A-3114-14T3