**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3182-17T2

ESTEE VINEYARDS, INC.,

     Plaintiff-Appellant,

v.

CRANBURY TOWNSHIP
PLANNING BOARD and
INTERSTATE OUTDOOR
ADVERTISING, LP,

     Defendants-Respondents.

Submitted March 27, 2019 - Decided May 16, 2019

Before Judges Koblitz, Currier, and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-0900-17.

Paul A. Sandars, III, argued the cause for appellant (Lum, Drasco & Positan, LLC, attorneys; Paul A. Sandars, III, of counsel and on the briefs).

Trishka Waterbury Cecil and Henry T. Chou argued the cause for respondents (Mason, Griffin & Pierson, PC, attorneys for respondent Cranbury Township Planning

Board; Hill Wallack, LLP, attorneys for respondent Interstate Outdoor Advertising, LP; Henry T. Chou and Trishka Waterbury Cecil, on the joint brief).

PER CURIAM

Plaintiff Estee Vineyards, Inc. appeals the February 5, 2018 order affirming defendant Cranbury Township Planning Board's (Board) approval of defendant Interstate Outdoor Advertising, LP's (Interstate) application for minor site plan approval to erect a billboard along the New Jersey Turnpike. After a review of the contentions advanced in light of the record and applicable principles of law, we affirm.

Plaintiff, a grape farming company based in Napa, California, owns property in the Industrial Light Impact (I-LI) Zone in Cranbury, New Jersey. Although residential properties are prohibited in the I-LI Zone, there is a farmhouse on the three and a half acre lot, which plaintiff leases to tenants. The residence, therefore, is a nonconforming use in the zone.

Billboards are a permitted use in the I-LI Zone. Interstate filed an application to erect a two-sided billboard in the Conrail railroad right of way (ROW), which runs parallel to the New Jersey Turnpike. The application did not require any variances, but sought three design waivers because of particular topographic conditions of the ROW. The sign was to be erected sixty feet above

2

grade level and illuminated by three 100-watt LED lights. It did not have a digital component. The sign was 556 feet away from plaintiff's property line and 762 feet from the farmhouse.

At the Board hearing on the application, Interstate presented three witnesses: a civil engineer/surveyor; its Chief Operating Officer (CEO) as an expert in outdoor advertising; and a professional planner.

In addressing the visual impact of the billboard on nearby properties, the CEO noted the sign was 800 feet from the nearest "residential zone." In discussing the closest nonconforming residence located approximately 340 feet from the sign, he stated:

> As you can see, there is nothing across the street from this proposed sign. There is a residence that is located in the industrial zone to the north . . . the side of the house to the sign. But if you could go back to [the] Exhibit, you will notice that the sign, the sign on the site plan is a wide V, it's a 40 foot V, we usually use a 25 foot V. We widened this for the purpose of pushing what would be the base directed to southbound traffic on the Turnpike closer to that traffic so that the sign face and its illumination would be directed to the traffic and not to the house.
>
> . . . .
>
> By making it as wide as we possibly could to still maintain reasonable visibility to the Turnpike, we have minimized any reasonable impact to that house. In addition we needed to raise the elevation of the sign

A-3182-17T2

from the 50 [to] 60 feet. . . . By elevating that sign, that also minimizes impact [to] the house, because that sign is now up in the air above that home. So we have done what . . . we could [to] maintain visibility to the Turnpike and minimize any impact to residential properties. The only one that would have the impact would be the one home but we think based on the elevation of the sign and angle, there is little or no impact to that home.

The Board's professional planner corroborated that Interstate's experts had addressed all of the required impacts for review of the application, including the sign's visual impact.

Plaintiff's counsel did not contest any of the requested design waivers, but generally objected to approval of the billboard. Plaintiff did not present any expert witnesses on its own behalf or rebut Interstate's expert testimony. Plaintiff's counsel was also uncertain as to the exact location of plaintiff's property on the aerial maps, causing some confusion and speculation among the Board members regarding the distance between plaintiff's property and the sign. In response, the Board's planner advised:

[T]he ordinance that Cranbury has in terms of the distance location is distance to a residential zone which is 800 feet[.][1] [S]o even if the house that we talked about w[as] in a residential zone, [the] billboard would still comply with that distance requirement . . . . [The

---

[1] Under Cranbury Township Municipal Ordinance § 150-41(J)(2)(f), a billboard must be located no closer than 800 feet to a residential zone.

proposed billboard is] a conforming use in an industrial zone where billboards are permitted.

The Board voted unanimously to approve the application and adopted a memorializing resolution on January 5, 2017. The Board approved the design waivers as reasonable and necessary due to the topography of the land. It noted that the waivers actually served to decrease the impact of the sign on neighboring properties.

Thereafter, plaintiff filed a complaint in lieu of prerogative writs, seeking to invalidate the Board's approval of Interstate's application. Plaintiff alleged the Board had acted arbitrarily, capriciously, and unlawfully in granting the application because it had "incomplete and incorrect information" on the "specific location" of plaintiff's property, precluding the Board from determining whether the sign had a detrimental visual impact on the property.

Following a hearing, Judge Michael V. Cresitello, Jr. issued a comprehensive, nineteen-page written opinion affirming the Board's decision. After a thorough review of the testimony presented during the Board's hearing on the application and the applicable principles of law, Judge Cresitello noted the Board "could not have denied Interstate's application outright" because the billboard was a permitted use under the zoning ordinance. Therefore, the Board

only had the authority to deny the three site plan exceptions requested by Interstate.

Consequently, the judge then analyzed whether the Board acted arbitrarily in granting the design waivers. He determined the Board's "professional witnesses gave uncontroverted testimony that the waivers . . . were necessitated by existing land and topographic conditions," such as the narrowness of the ROW and the "steep drop" between the grade of the Turnpike and the ROW. Therefore, the judge found the Board made appropriate factual findings based on the evidence presented at the hearing.

In addressing plaintiff's argument regarding the billboard's visual impact, Judge Cresitello determined the distance between the proposed billboard and plaintiff's property "was not a criterion in the [Board's] decision to approve Interstate's minor site plan application." He noted the Board voted to approve the application "without any deliberations regarding the distance issue," and the resolution did not refer to the distance between plaintiff's property and the billboard. The judge stated: "This . . . is further indicia that the Board understood that the distance between the billboard – a variance-free permitted use – and nonconforming residences in the I-LI Zone was irrelevant, even as to a residence that is much closer to the billboard than [p]laintiff's residence."

6

In further determining it was "clear" the Board had addressed the visual impacts of the billboard, Judge Cresitello stated:

> It is evident from the hearing transcript and the [Board's] Resolution that the [Board] was aware of the location of the residence on plaintiff's property in relation to the proposed billboard, even if it did not know the precise distance in feet, and it was aware of [p]laintiff's objections to the billboard and the basis for those objections. The record therefore contradicts [p]laintiff['s] assertion that the [Board] did not consider the billboard's impact to [p]laintiff's property.

As a result, Judge Cresitello concluded that the Board's decision was not arbitrary, capricious, or unreasonable.

In our review, we are governed by the same standard used by the trial court. See Bd. of Educ. of Clifton v. Zoning Bd. of Adjustment of Clifton, 409 N.J. Super. 389, 433 (App. Div. 2009) (citations omitted). Therefore, our review is limited to determining whether the Board could reasonably have reached its decision. See Davis Enters. v. Karpf, 105 N.J. 476, 485 (1987) (citing Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 285 (1965)).

"Ordinarily, when a party challenges a . . . board's decision through an action in lieu of prerogative writs, the . . . board's decision is entitled to deference." Kane Props., LLC v. City of Hoboken, 214 N.J. 199, 229 (2013). Decisions on land use applications are entrusted to the sound discretion of the

7

planning board.  See Kaufmann v. Planning Bd. of Warren Twp., 110 N.J. 551, 558 (1988).  Because the board has "'peculiar knowledge of local conditions,' [its] factual findings are entitled to substantial deference and are presumed to be valid."  Grubbs v. Slothower, 389 N.J. Super. 377, 382 (App. Div. 2007) (quoting Burbridge v. Mine Hill Twp., 117 N.J. 376, 385 (1990)).

Therefore, a court generally "will not substitute its judgment for that of a board 'even when it is doubtful about the wisdom of the action.'"  Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment of W. Windsor Twp., 172 N.J. 75, 81 (2002) (quoting Cellular Tel. Co. v. Zoning Bd. of Adjustment of Borough Harrington Park, 90 F. Supp. 2d 557, 563 (D.N.J. 2000)).  We, therefore, defer to a planning board's decision and reverse only if its action was arbitrary, capricious, or unreasonable.  See Zilinsky v. Zoning Bd. of Adjustment of Borough of Verona, 105 N.J. 363, 368 (1987).  However, where the issue on appeal involves a purely legal question, we afford no special deference to the trial court's or the planning board's decision, and must determine if the board understood and applied the law correctly.  See D. Lobi Enters., Inc. v. Planning/Zoning Bd. of Borough of Sea Bright, 408 N.J. Super. 345, 351 (App. Div. 2009).

On appeal, plaintiff contends the trial court erred: 1) in concluding the Board's approval of the application was not arbitrary or capricious because the

A-3182-17T2

Board did not adequately consider the impact of the billboard on plaintiff's property; and 2) in determining the exact distance between the residential property and proposed billboard was not a relevant criterion.

After reviewing the record, we conclude that Judge Cresitello's factual findings are fully supported by the record and, in light of those facts, his legal conclusions are unassailable. We, therefore, affirm substantially for the reasons that Judge Cresitello expressed in his well-reasoned opinion. We add only the following brief comments.

Cranbury Township Municipal Ordinance § 150-41(J) governs site plan approvals in I-LI zones. Under § 150-41(J)(2), billboards are a permitted use in that zone. In reviewing an application for a billboard, a planning board must consider "the impact of the proposed billboard on surrounding properties and the Turnpike itself. . . . Visual impact, particularly on surrounding properties, shall be minimized and addressed." Cranbury Township Municipal Ordinance § 150-41(J)(2)(h).

Here, the Board was required to, and did consider, the visual impact on the surrounding properties, including plaintiff's. The Board heard uncontroverted expert testimony that the altered design of the billboard would "minimize[] any reasonable [visual] impact" on the nearby nonconforming properties, and the utilization of LED fixtures was intentionally selected to only

9

illuminate the sign faces. Without testimony from plaintiff to refute these assertions, it was not arbitrary for the Board to determine that the visual impact would be minimal to plaintiff's and other nonconforming properties.

We also are unconvinced by plaintiff's argument that the judge erred in his determination that distance was not a relevant criterion. Plaintiff's reliance on § 150-41(J)(2)(f) to support its assertion is misplaced. That section of the ordinance provides the location of a billboard can be no closer than 800 feet to a residential zone. The ordinance also permits the distance to be reduced to 500 feet from a residential zone under certain conditions. However, as plaintiff's property is not in a residential zone, the 800 foot required distance is inapplicable.[2]

It was also within the Board's authority to grant the design waivers. The Board relied on the unrefuted testimony of Interstate's witnesses and found the design waivers were "needed" due to the "constraints imposed by the . . . ROW's narrow width." Therefore, because the application was for a permitted use that complied with the criteria provided under the Township's ordinance, it was reasonable for the Board to approve the design waivers and application.

---

[2] We note that at its location of 762 feet away from the billboard, plaintiff's property was almost at the approved distance for a residential zone.

A-3182-17T2

We are satisfied the Board's decision was not arbitrary, capricious, or unreasonable. We discern no reason to disturb its judgment and decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11