**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1513-22

355 ROUTE 9, LLC,

    Plaintiff-Appellant,

v.

THE CROWNPOINT GROUP,
LLC, and BOROUGH OF
SOUTH RIVER PLANNING
BOARD,

    Defendants-Respondents.

_____

Argued March 4, 2024 – Decided March 13, 2024

Before Judges Mawla, Chase, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-5730-21.

Ronald S. Gasiorowski argued the cause for appellant (Gasiorowski & Holobinko, attorneys; Ronald S. Gasiorowski, on the briefs).

Jeremy M. Solomon argued the cause for respondent the CrownPoint Group LLC (Bob Smith & Associates LLC, attorneys; Jeremy M. Solomon, Timothy M. Arch, and Daven K. Persaud, on the brief).

Thomas Walter Barlow argued the cause for respondent Borough of South River Planning Board (Lombardi & Lombardi, PA, attorneys; Thomas Walter Barlow, on the brief).

PER CURIAM

Plaintiff 355 Route 9, LLC appeals from a December 15, 2022 order upholding defendant Borough of South River Planning Board's (Board) grant of defendant CrownPoint Group LLC's development application and dismissing plaintiff's complaint in lieu of prerogative writs with prejudice. We affirm.

Defendant[1] filed an application seeking preliminary and final site plan approval and a bulk variance to build a self-storage facility consisting of 750 individual self-storage units on a property located on Old Bridge Turnpike. Defendant's property comprises 1.97 acres situated in South River's general business district, B-2 Zone.

The application sought a bulk variance under N.J.S.A. 40:55D-70(c)(1) and (c)(2) of the Municipal Land Use Law (MLUL). The maximum height limitations of the B-2 Zone is thirty-five feet or two and one-half stories, whichever is less. Defendant sought to build a three-story structure that was

---

[1] Hereinafter, we refer to defendant as CrownPoint.

thirty-four and one-half feet in height, which required a variance from the maximum building height of two and one-half stories.

Defendant also sought a bulk variance from the loading space requirement, which mandated one loading space per 10,000 square feet. Based on this ratio, the property would require ten loading spaces, however, defendant's proposal included no loading area because the site had space for general loading. The proposed building also did not conform to the off-street parking requirement, but defendant did not apply for a variance on this issue.

Over the course of three days, the Board heard testimony from defendant's president and its experts, namely, an engineer, architect, traffic engineer, and professional planner. In addition to cross-examining defendant's witnesses, plaintiff called its own expert, a planner and traffic engineer, who testified regarding the height variance. Plaintiff offered no testimony on the loading or parking space issues. The Board also received one public comment on an issue unrelated to those raised in this appeal.

The Board unanimously approved the site plan and variance and issued a detailed ten-page written resolution recounting the evidence and testimony presented and its findings and conclusions. It found the site plan "would be beneficial to the site [and] . . . the surrounding properties and . . . the Borough

in general." Further, the proposal "could be approved without substantial detriment to the intent and purposes of the Zoning Plan, Zoning Ordinance[,] and the public good." The resolution noted the Board based its decision on the testimony of defendant's "experts and witnesses and the recommendations of the Borough's professional staff" and granted the site plan approval and variances subject to nine conditions itemized in the resolution that we need not discuss here.

Plaintiff filed a complaint in lieu of prerogative writs. It claimed the Board did not have jurisdiction to grant the height variance because defendant required a use variance pursuant to N.J.S.A. 40:55D-70(d)(6), which could only be granted by the Zoning Board of Adjustment.

Alternatively, plaintiff argued a variance pursuant to N.J.S.A. 40:55D-70(c)(1) or (c)(2) should have been denied because defendant did not demonstrate an undue hardship, the proposed deviation advanced no zoning purpose and only benefited defendant, and the intensified use of the property was a substantial detriment to the public good. Plaintiff claimed defendant did not apply for or receive a variance regarding the parking requirement, which rendered its application defective, and the Board's approval of the parking proposal was erroneous because it was done without notice to the public.

Judge Thomas Daniel McCloskey conducted a trial and heard arguments after which he issued a detailed written opinion adjudicating plaintiff's claims. He found the Board had authority to grant a (c) variance and the height variance defendant sought was not enumerated under (d) because "a zoning board or planning board may grant a 'c' variance as to <u>any</u> regulation enacted under the MLUL other than those which may only be granted exclusively under subsection d." (Emphasis in original).

The judge rejected plaintiff's jurisdictional argument noting that at the initial hearing plaintiff's counsel told the Board he had discussed this issue with the Board's attorney and would not be objecting on jurisdictional grounds. The judge noted "[t]he matter of the Board's jurisdiction was never raised again by . . . [p]laintiff . . . through the three . . . hearings conducted before the Board."

However, in the interest of completeness, the judge addressed the jurisdictional issue on the merits. He cited Cox & Koening, <u>New Jersey Zoning & Land Use Administration</u> § 6-3.4 (2013), and its discussion of the Legislative amendments to the MLUL. The treatise noted as follows: "The clear intent of the amendment [to N.J.S.A. 40:55D-7(d)] is to permit the planning board to grant limited height variances . . . where small variations from the ordinance limitation may be desirable . . . ." Therefore, the Legislature intended to vest

A-1513-22

exclusive jurisdiction over major height variations in the zoning board of adjustment. Ibid. The judge noted an example of when a height limitation issue would be decided by a planning board rather than the zoning board would include where an "ordinance[] provide[s] height limitations expressed both in terms of stories and in feet [and w]here the limitation as expressed in stories is exceeded but the limitation in feet is not." Ibid.

South River's ordinance expressed the height limitation in stories and feet; it limited structures to the lesser of two and one-half stories or thirty-five feet. Because defendant's application exceeded the story requirement but did not exceed the height requirement, the judge found "the Board appropriately treated the application as a 'c' bulk variance since section 70[(d)] of the MLUL requires that the structure exceed the height limitation by '[ten] feet or [ten percent]' for the exclusive jurisdiction of the zoning board . . . to be triggered." The judge concluded "when height limitation is stated in feet the legislative intent is that the actual height of the building in feet—not stories—is the dispositive factor." (Emphasis in original). Here, the proposed building was less than the thirty-five foot maximum.

The judge rejected plaintiff's alternative argument that, assuming the Board had jurisdiction, it erroneously granted the variance because defendant

did not demonstrate it met the criteria for a variance. He found "substantial credible evidence" defendant satisfied the positive criteria for a variance under N.J.S.A. 40:55D-70(c)(1) because its planner testified the additional half story was necessary for the building to meet the minimum square footage for a viable self-storage facility in the contemporary market. Although plaintiff argued defendant could have constructed a floor below-grade rather than an additional half story, the unrefuted testimony of defendant's planner was that the property's topography included a high groundwater table, which made constructing a below-grade floor a hardship.

Defendant satisfied the negative criteria for a variance under N.J.S.A. 40:55D-70(c)(1) because the addition of a half-story to the structure did not pose a "substantial detriment to the public good" nor did it "substantially impair the intent and purpose of the zone plan and zoning ordinance." The building's height would be compliant with the ordinance height restrictions and the height of the other buildings in the district. The judge noted the Board's professionals and defendant's experts opined that "self-storage use—of all other permitted and foreseeably higher intense retail uses—was the least intensive permitted use[] in the B-2 Zone and for this property." Therefore, the proposed use would "not offend the [m]aster [p]lan or [the] zoning scheme of the Borough."

7

The judge was unpersuaded by plaintiff's intensity of use argument, because it was neither "a requirement [n]or [a] justification for denying a (c)(2) variance." He cited ERG Container Services, Inc. v. Board of Chosen Freeholders, where we stated: "[I]ntensification of a permitted use is more appropriately addressed by imposing appropriate conditions and restrictions in connection with site plan approval, rather than by completely barring the proposed use." 352 N.J. Super. 166, 176-77 (App. Div. 2002). He concluded a height compliant self-storage facility, a type of building permitted in the B-2 Zone, "was not only consistent with, but also actually advanced the intent and purposes of the B-2 Zone."

The judge credited the testimony of defendant's planner that a variance: promoted public welfare; "provide[d] for adequate light, air, and open space"; "provide[d] a desirable visual environment"; and "promote[d] efficient use of the land," thereby satisfying the N.J.S.A. 40:55D-70(c)(2) criteria. He further credited the testimony of defendant's planner and traffic engineer regarding the benefits of the project and the Board's conclusion the benefits of the proposal outweighed the detriments because: "[t]he use [was] permitted in the area"; "[t]he need for the use [was] 'cooked' into the . . . ordinance as a permitted use"; "[t]he proposed use has much less obtrusive and less intense functionality";

"[t]he project would promote efficient land use and the goal of a variety of land uses in appropriate locations and provide positive aesthetics"; "[t]he project provides for better landscaping and . . . more shade trees, street trees, and other greenery and significantly reduces impervious coverage"; "[t]he project significantly improves traffic movements at the site . . . [and] the trip rate for the project is about one-half the national average and the traffic levels of service grade"; "[t]he project has low water demand, low sewer demand, and low traffic generation; and . . . the site will have a significantly better organization and better definition of space[,] which will enhance the visual environment." The judge concluded the Board's finding a variance did not "substantially impair the intent and purpose of the zone plan and zoning ordinance" was based on the substantial, credible evidence in the record.

South River's Zoning Ordinance contains parking requirements for retail uses. Plaintiff claimed the Board erred because defendant was required to have 580 off-street parking spaces based on the size of the building or seek a variance from the parking requirement. The judge rejected these claims, noting the matter was within the Board's discretion and the evidence presented supported the Board's conclusion there was enough parking provided on the site. Indeed, defendant's engineer testified there were no minimum parking requirements for

9

self-storage facilities "and neither the Board nor its professionals indicated a variance would be necessary for parking." Defendant's engineer further opined that based on his experience, the nine parking spaces defendant's facility would have were sufficient because they would typically be used by new customers to access the facility's office. He testified there were facilities with as little as five spaces. Defendant's facility also had six additional spaces for the area that existing customers could access. Further, defendant's traffic expert testified the peak vehicle traffic on defendant's property during the weekdays and weekends would be six and eight vehicles, respectively.

The judge found "[t]here was no significant or other evidence presented to the contrary" and plaintiff's objections to the parking were raised after the fact. He concluded the Board's reliance on the traffic study and the uncontroverted expert testimony was appropriate and its decision not to require a variance was not arbitrary, capricious, or unreasonable.

The judge also rejected plaintiff's assertion defendant did not provide notice of the request for a parking variance in its application. He pointed out defendant's notice stated it would seek "any and all other or further relief it deemed necessary with respect to the [a]pplication over the course of the hearings."

I.

On appeal, plaintiff repeats the arguments it raised regarding the height of the building, namely that the building's height was ten percent greater than the permitted height in the B-2 Zone and defendant should have applied for a use variance under N.J.S.A. 40:55D-70(d)(6). It reiterates the argument that even under N.J.S.A. 40:55D-70(c), the Board should not have granted defendant a variance because defendant failed to satisfy the positive and negative criteria. In this regard, plaintiff claims defendant could have constructed a below-grade story and the Board's deviation from the two and one-half story height requirement did not advance the purpose of zoning and only benefitted defendant. Plaintiff also reprises the arguments it raised regarding the off-street parking. It further asserts the resolution was deficient because it lacked adequate factual findings to justify the variance granted to defendant.

Judicial review of land use matters is circumscribed as "public [land use] bodies, because of their peculiar knowledge of local conditions, must be allowed wide latitude in their delegated discretion." Jock v. Zoning Bd. of Adjustment, 184 N.J. 562, 597 (2005) (citing Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 296 (1965)). A board's decision will not be overturned unless it was

11

"arbitrary, capricious, or in manifest abuse of its discretionary authority . . . ." Ibid.

The Supreme Court has repeatedly instructed that, "courts ordinarily should not disturb the discretionary decisions of local [land use] boards that are supported by substantial evidence in the record and reflect a correct application of the relevant principles of land use law." Lang v. Zoning Bd. of Adjustment, 160 N.J. 41, 58-59 (1999). "Even when doubt is entertained as to the wisdom of the action, or as to some part of it, there can be no judicial declaration of invalidity in the absence of clear abuse of discretion by the public agencies involved." Kramer, 45 N.J. at 296-97.

However, determinations on questions of law in land use matters do not warrant equivalent deference and are reviewed de novo. Bubis v. Kassin, 184 N.J. 612, 627 (2005). The de novo standard of review of legal decisions applies on appeal after a trial court has made its own ruling. See James R. Ientile, Inc. v. Zoning Bd. of Adjustment, 271 N.J. Super. 326, 329 (App. Div. 1994) (citing Cherney v. Matawan Borough Zoning Bd. of Adjustment, 221 N.J. Super. 141, 144-45 (App. Div. 1987)).

Pursuant to these principles and having reviewed the record, we affirm for the reasons expressed in Judge McCloskey's thorough and well-written opinion.

Our review of the evidence in the record convinces us the judge neither made a mistaken finding of fact nor misapplied the law, and his findings are supported by the evidence and unassailable. R. 2:11-3(e)(1)(A). Plaintiff's arguments on appeal lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION